[No. A053438. First Dist., Div. Two. Apr. 10, 1992.]

VIVIAN MARY SANTOS, Plaintiff and Respondent, v.
DEPARTMENT OF MOTOR VEHICLES, Defendant and Appellant.

538

**COUNSEL**

Daniel E. Lungren, Attorney General, Robert L. Mukai, Chief Assistant Attorney General, N. Eugene Hill, Assistant Attorney General, Henry G. Ullerich, Acting Assistant Attorney General, Jose R. Guerrero, Thomas P. Reilly and Kim M. Settles, Deputy Attorneys General, for Defendant and Appellant.

J. Thomas Sherrod for Plaintiff and Respondent.

**OPINION**

**KLINE, P. J.**—The Department of Motor Vehicles (Department) appeals from a judgment granting a peremptory writ of administrative mandamus to set aside the suspension of respondent's driving privilege. Appellant contends the trial court's decision granting the writ and awarding respondent attorney fees was unsupported by the evidence.

STATEMENT OF THE CASE AND FACTS

At 11:23 p.m. on November 8, 1990, respondent Vivian Mary Santos was arrested by California Highway Patrol Officer M. Polanko for driving under the influence of alcohol and/or drugs (Veh. Code, § 23152, subd. (a)). According to the officer's sworn statement, he observed respondent driving in the slow lane at speeds of 45 to 60 miles per hour, weaving within the lane, crossing into the adjacent lane several times and following a small sedan too closely. When stopped, respondent displayed bloodshot and watery eyes, unsteady gait, slurred speech and smelled of alcohol. Respondent was given an administrative per se order of suspension/revocation temporary license endorsement (suspension order) which informed her that her driving privilege would be suspended or revoked effective 45 days from her arrest and that she could request a hearing to show the suspension was not justified within 10 days of receiving the notice. She submitted to a blood test, the results of which showed a blood-alcohol concentration of 0.13 percent.

At respondent's request, a formal hearing regarding the suspension was held on December 11. Respondent stipulated that the officer had probable cause to arrest and that she was lawfully arrested, leaving as the sole contested issue whether she was driving or in actual control of a motor vehicle when her blood-alcohol content was 0.08 percent or above. (See Veh. Code, § 13558, subd. (c)(2).) The Department introduced and received into evidence the following documents: the officer's statement, the suspension order; a document dated November 12, 1990, on letterhead from the Institute of Forensic Sciences, identifying respondent and relating the results of a test performed on a blood sample received November 12 as "ethanol; 0.13%"; an administrative per se telephone information sheet noting respondent's request for a hearing and respondent's driving record.

Respondent's attorney objected to the blood test results on the grounds that it was hearsay insufficient to support any of the findings required for suspension of respondent's driving privilege; did not come within the official records exception to the hearsay rule because there was no indication as to the time the entries were made; and did not meet statutory requirements in that it was not a sworn report by a peace officer. Additionally, respondent raised a variety of objections based on lack of foundation regarding the testing procedures and timing of the blood test.[1] Respondent also urged that the administrative order constituted improper notice of the grounds of

---

[1]Specifically, respondent urged there was no indication whether the sample was analyzed by means of enzymatic serum or whole blood analysis; whether the results were reported in terms of volume or by weight; what time the blood-alcohol level was determined; what

suspension as it failed to indicate a blood test was being taken.[2] The hearing officer overruled all these objections, and the Department introduced no further evidence.

Respondent testified she was stopped on November 8 while driving her fiancés car after a rehearsal dinner at which she had had a vodka and soda at 7 p.m., a glass of wine with dinner, which was served about 9:30, and another glass of wine after dinner, about 10:45. During the evening she drank many glasses of water; dinner consisted of spaghetti with meat sauce, French bread and butter and a dinner salad with creamy ranch dressing. She did not feel the effects of alcohol when she left the restaurant. After her arrest, a blood sample was taken at Washington Hospital in Fremont. Respondent weighed 95 pounds.

David Lewis testified as an expert in the field of forensic toxicology in behalf of respondent. Lewis testified that title 17 of the California Code of Regulations sets out requirements for the collection, preservation and analysis to ensure accuracy in blood tests. He stated that exhibit 2 did not report the blood test results by weight or reveal the time the analysis was performed. According to Lewis, without knowing the time blood was drawn there would be no way to determine what the blood-alcohol level was at an earlier time. Lewis explained that the effect of a given amount of alcohol varies depending on the weight of the subject; for an individual of 95 pounds, with an empty stomach, one standard drink of wine would raise the blood-alcohol level 0.039 percent and would take an average of 1 hour and 20 minutes to reach its maximum level. If the person had consumed the dinner respondent described, it would take about two and a half hours for the alcohol to reach its highest level. If a person was stopped by a police officer approximately twenty minutes after consumption of three or four drinks and a blood test performed immediately, the test would not show the person to be under the influence or impaired to operate a motor vehicle; a test performed later would show a blood-alcohol level higher than the level was at the time of driving. Based on the facts presented, Lewis opined that respondent's blood-alcohol level at the time of driving would have been less than 0.08

happened between the time the sample was taken and the time it was received by the laboratory four days later; whether the person performing the test was qualified and the equipment in proper operating condition; whether the test met *Kelly/Frye* (*People* v. *Kelly* (1976) 17 Cal.3d 24 [130 Cal.Rptr. 144, 549 P.2d 1240]; *Frye* v. *United States* (1923) 293 Fed. 1013) requirements for acceptance in the scientific community; whether the Department's own regulations regarding collection, preservation and reporting had been met; and whether the person who drew the blood was qualified as required by Vehicle Code section 23158, subdivision (a).

[2]The form contains boxes for the officer to check depending on whether the driver refuses to submit to a chemical test or chooses a breath, blood or urine test. While the box for blood test was checked on the Department's copy of the form, none of the boxes were checked on respondent's copy of the form.

percent by weight because the last drink she had consumed, and possibly earlier ones, would not yet have been absorbed.

In a decision served December 14, the Department determined that the suspension of respondent's driving privilege was proper and required in that the peace officer had reasonable cause to believe she had been driving a motor vehicle in violation of Vehicle Code section 23152 or 23153; she was placed under lawful arrest; and she was driving or in actual physical control of a motor vehicle when she had 0.08 percent or more, by weight, of alcohol in her blood. Appellant's license was suspended effective December 23, 1990, through April 22, 1991.

On January 11, 1991, respondent filed a petition for writ of mandate seeking to compel the Department to restore her driver's license. On January 14, the court issued an ex parte order staying the Department's administrative decision to suspend respondent's license. On January 29, the court issued its tentative decision granting the writ. Appearances and oral arguments were waived and on March 11 judgment was entered ordering the issuance of a peremptory writ of mandate commanding the Department to set aside its order and awarding respondent $1,500 attorney fees under Government Code section 800 and costs of $316.25.

DISCUSSION

I.

Vehicle Code section 23152[3] makes it unlawful for any person who is under the influence of an alcoholic beverage or has 0.08 percent or more, by weight, of alcohol in his or her blood to drive a vehicle. Section 13353.2 mandates that the Department "immediately suspend the privilege of any person to operate a motor vehicle if the person was driving or was in actual physical control of a motor vehicle when the person had 0.08 percent or more, by weight, of alcohol in his or her blood." Under the statutory scheme for "administrative per se" suspension, when a peace officer arrests a person for violation of section 23152, he or she must "immediately forward to the department a sworn report of all information relevant to the enforcement action, including information which adequately identifies the arrested person, a statement of the officer's grounds for belief that the person violated Section 23152 . . . , a report of the results of any chemical tests which were conducted on the person or the circumstances constituting a refusal to submit to or complete the chemical testing pursuant to Section 23157 . . . ." (§ 23158.2.) If the chemical test results show a blood-alcohol concentration

---

[3]All further statutory references will be to the Vehicle Code unless otherwise specified.

of 0.08 percent or more, or if the driver refuses a chemical test or requests a blood or urine test, the police officer must serve a notice of order of suspension, confiscate the driver's license and issue a 45-day temporary driving permit. (§§ 23158.5; 23157, subds. (e), (f).) If the peace officer has not served the notice of order of suspension, the Department must mail written notice of the order upon receipt of the officer's sworn report. (§ 13353.2, subd. (b).)

The Department must make a determination of the facts requiring suspension on the basis of the peace officer's sworn report. (§ 13353.2, subd. (d).) It must then determine by a preponderance of the evidence whether the peace officer had reasonable cause to believe the driver violated section 23152; the driver was placed under arrest; and the driver was driving or in actual physical control of a motor vehicle with 0.08 percent or more, by weight, of alcohol in his or her blood. (§ 13557, subds. (a), (b)(2).) This determination is final unless the driver timely requests a hearing. (§ 13557, subd. (b)(2).)

Upon the driver's timely request, the Department must hold an administrative hearing at which the evidence is not limited to that presented at the prior administrative review. (§ 13558.) The Department's determination is then subject to judicial review. (§ 13559.) The trial court must conduct its review on the record of the hearing and may not consider other evidence. (§ 13559.) ▉ The task for the trial court is to determine, exercising its independent judgment, whether the administrative decision was supported by the weight of the evidence. (*Coombs* v. *Pierce* (1991) 1 Cal.App.4th 568, 575-576 [2 Cal.Rptr.2d 249]; § 13559; Code Civ. Proc., § 1094.5.) On appeal, the only question is whether substantial evidence supports the trial court's decision. (*Coombs* v. *Pierce, supra,* 1 Cal.App.4th at p. 576; *Barrie* v. *Alexis* (1984) 151 Cal.App.3d 1157, 1160-1161 [199' Cal.Rptr. 258].)

In the present case, the trial court found that the Department's decision to suspend respondent's driving privilege was not supported by its findings and the findings were not supported by "competent evidence as required by Government Code Section 11513(c), Evidence Code Section 1280(b), and Vehicle Code Section 13558(c)(2) in that, from a consideration of the record as a whole, insufficient evidence exists to support a determination that [respondent] was driving or in actual physical control of a motor vehicle when she had 0.08 percent or more, by weight, of alcohol in her blood."[4] The Department contends this decision must be reversed because competent evidence—the officer's statement and blood test results—prove respondent was driving with a blood-alcohol level requiring suspension.

---

[4] Section 13558, subdivision (c)(2), provides that "[t]he only issues at the hearing on an order of suspension pursuant to Section 13353.2 shall be whether the peace officer had

Government Code section 11513 provides in pertinent part: "(b) Each party shall have these rights: to call and examine witnesses, to introduce exhibits; to cross-examine opposing witnesses on any matter relevant to the issues . . . ; to impeach any witness . . . ; and to rebut the evidence against him or her. . . . [¶] (c) The hearing need not be conducted according to technical rules relating to evidence and witnesses, except as hereinafter provided. Any relevant evidence shall be admitted if it is the sort of evidence on which responsible persons are accustomed to rely in the conduct of serious affairs, regardless of the existence of any common law or statutory rule which might make improper the admission of the evidence over objection in civil actions. Hearsay evidence may be used for the purpose of supplementing or explaining other evidence but shall not be sufficient in itself to support a finding unless it would be admissible over objection in civil actions."[5]

The primary evidence of respondent's blood-alcohol level relied upon by the Department was the laboratory report of the blood test result. In *Imachi v. Department of Motor Vehicles* (1992) 2 Cal.App.4th 809 [3 Cal.Rptr.2d 478], we held that an officer's sworn statement reporting a blood test result he had reviewed constituted hearsay which could not form the sole basis of a suspension. ▆ An officer's statement reporting firsthand observations —objective symptoms of intoxication, circumstances of a driver's refusal to submit to a chemical test, or results of a personally administered breath test—falls within the public employee records exception to the hearsay rule. (Evid. Code, § 1280; *Imachi v. Department of Motor Vehicles, supra,* 2 Cal.App.4th at p. 817; *Snelgrove v. Department of Motor Vehicles* (1987) 194 Cal.App.3d 1364, 1374-1376 [240 Cal.Rptr. 281]; *Fisk v. Department of Motor Vehicles* (1981) 127 Cal.App.3d 72, 76-78 [179 Cal.Rptr. 379, 31 A.L.R.4th 905]; [see our contemporaneous opinion in *McKinney v. Department of Motor Vehicles, ante,* p. 519 [7 Cal.Rptr.2d 18]].) This exception makes admissible a writing recording an act, condition or event if the writing

reasonable cause to believe the person had been driving a motor vehicle in violation of Section 23152 or 23153, the person was placed under arrest, and the person was driving or in actual physical control of a motor vehicle when the person had 0.08 percent or more, by weight, of alcohol in his or her blood."

[5]Formal Department hearings are governed by the Administrative Procedures Act. (Gov. Code, §§ 11370, 11501.) Section 14112 provides that "[a]ll matters in a hearing not covered by this chapter shall be governed, as far as applicable, by Chapter 5 (commencing with Section 11500) of Part 1 of Division 3 of Title 2 of the Government Code." The Department contends that Government Code section 11513 does not apply to the present proceedings because the Vehicle Code fully covers the subject of use of the officer's sworn statement and blood test results at suspension hearings. We do not reach this contention because, as will be discussed, even assuming Government Code section 11513 applied to these proceedings, reliance upon the officer's report and blood test results would be permissible because both fall within an exception to the hearsay rule.

"was made by and within the scope of duty of a public employee," "at or near the time of the act, condition, or event" and "[t]he sources of information and method and time of preparation were such as to indicate its trustworthiness." (Evid. Code, § 1280.) An officer's statement relating first-hand observations meets these criteria and " 'the statutory presumption of duty regularly performed (Evid. Code, § 664) shifts the foundational, method-of-preparation burden in this situation,' " requiring the licensee to show that the officer failed in his or her duty to observe and correctly report the events described in the statement. (*Imachi* v. *Department of Motor Vehicles*, *supra*, 2 Cal.App.4th at p. 815; *Snelgrove* v. *Department of Motor Vehicles*, *supra*, 194 Cal.App.3d at p. 1375; see *Fisk* v. *Department of Motor Vehicles*, *supra*, 127 Cal.App.3d at p. 77.)

By contrast, because the officer in *Imachi* did not personally perform the blood test, the sworn statement that he had seen and was accurately reporting the results of that test "could not attest to the accuracy of the test results themselves or the propriety of procedures employed in obtaining them." (2 Cal.App.4th at p. 816.) We noted, however, that "[t]he actual written report of a blood test performed by a licensed forensic laboratory on behalf of a law enforcement agency would presumably fall within the public employee records exception to the hearsay rule: The record of the test result would be 'made by and within the scope of duty of a public employee,' 'at or near the time of the act, condition, or event' and the requisite indicia of trustworthiness would be supplied by the fact that the analyst was reporting firsthand observations as well as by the presumption of official duty regularly performed. (Evid. Code, § 664.) Accordingly, faced with a report of chemical test results, the burden would be on the licensee to demonstrate that the test was not properly performed." (*Imachi*, *supra*, 2 Cal.App.4th at pp. 816-817, fn. omitted.)[6]

The present case involves the type of evidence missing in *Imachi* —the report of the blood test result from the laboratory itself. Respondent urges the report does not meet the requirements of the public employee records exception to the hearsay rule because it does not indicate the time it was prepared so as to demonstrate it was made "at or near the time of the act, condition, or event." (Evid. Code, § 1280, subd. (b).) The presumption of duty regularly performed, however, shifts the burden to respondent to show the report was not properly prepared. (See *Imachi* v. *Department of Motor*

[6]We further noted that "[w]hether or not the forensic laboratory in question was itself a public entity, the analyst performing chemical tests for a law enforcement agency would be a 'public employee' within the statutory definition of that term, which includes 'an officer, agent, or employee of a public entity.' (Evid. Code, § 195.)" (*Imachi*, *supra*, 2 Cal.App.4th at p. 817, fn. 5.)

*Vehicles, supra,* 2 Cal.App.4th at pp. 816-817; *Snelgrove* v. *Department of Motor Vehicles, supra,* 194 Cal.App.3d at p. 1375; *Fisk* v. *Department of Motor Vehicles, supra,* 127 Cal.App.3d at p. 77.) ██ ██ In the absence of evidence the report was not properly prepared, the Department was entitled to rely upon it.[7]

This conclusion, however, does not end our inquiry. As respondent repeatedly emphasizes, the report of the blood test results inexplicably failed to indicate the time the sample was collected or analyzed. Respondent's expert witness testified that blood-alcohol level rises for a period of time after a drink is consumed, so that a test administered shortly after consumption would reveal a lower blood-alcohol level than a test performed when the alcohol had reached its maximum level. Additionally, the effect of a given amount of alcohol varies depending on the subject's weight and amount of food consumed. Based on respondent's testimony regarding amounts and times of alcohol and food consumed, her expert testified that he believed her blood-alcohol level would have been less than 0.08 percent at the time of driving because at least the last drink she consumed would not yet have been absorbed.

---

[7]We disagree with the Department's suggestion that provisions of the Vehicle Code establish hearsay exceptions for reports of chemical test results. The first provision cited is section 13353.2, subdivision (d), which directs the Department to make its determination whether a person was driving or in actual physical control of a motor vehicle when he or she had 0.08 percent or more of alcohol in his or her blood "on the basis of the report of a peace officer submitted pursuant to Section 23158.2." The section 23158.2 report is that submitted immediately after an arrest, which must contain specified information within the officer's knowledge at the time of the arrest including "a report of the results of any chemical tests which were conducted on the person or the circumstances constituting a refusal to submit to or complete the chemical testing." Necessarily, the section 23158.2 report cannot contain results of chemical tests not performed by the officer at the time of arrest, i.e., blood and urine tests. Section 13553.2, subdivision (d), therefore cannot be viewed as creating a hearsay exception for subsequently obtained blood test results. Additionally, section 13353.2, subdivision (d), concerns the Department's initial administrative decision regarding suspension, not the evidence sufficient to support suspension once the licensee requests a hearing. (See *Daniels* v. *Department of Motor Vehicles* (1983) 33 Cal.3d 532, 541 [189 Cal.Rptr. 512, 658 P.2d 1313].) At a subsequent administrative hearing to review the suspension, the evidence is not limited to that presented at a prior administrative review. (§ 13558, subd. (b).)

The Department's suggestion that a hearsay exception which would encompass the blood test results may be found in former section 14108 (now § 14104.7), which requires the Department to "consider its official records" was rejected in *Daniels. Daniels* viewed section 14108 as insufficient to show a "clear legislative authorization to allow use of the report as the sole basis to support a license suspension" in view of the emphatic prohibition in Government Code section 11513 against sole reliance on hearsay evidence. (33 Cal.3d at pp. 538-539.) Section 13557, subdivision (a), which requires the Department to "consider the sworn report submitted by the peace officer . . . and any other evidence accompanying the report" cannot be viewed as sufficient to create an exception; much as the receipt of a report by the Department does not address the competency, reliability or trustworthiness of the report (*ibid.*), the receipt of test results by a peace officer does not attest to the competency, reliability or trustworthiness of the results.

 The Department bore the burden of proving the fact necessary to support suspension of respondent's driver's license. (*Daniels* v. *Department of Motor Vehicles, supra,* 33 Cal.3d 532, 536.) The Department did not rebut respondent's evidence that the test results failed to prove her blood-alcohol level *at the time of driving* was 0.08 percent or higher and, in fact, that her blood alcohol level at the time of driving was less than 0.08 percent. Whether or not the trial court accepted this evidence to the point of believing respondent's blood-alcohol level was in fact lower than 0.08 percent at the time of driving, it is obvious that the laboratory test results failed to provide a piece of information critical to a determination of the level of alcohol in respondent's blood at the time of driving.[8] While the absence of evidence of the time respondent's blood sample was taken did not render the test result inadmissible, without such evidence the Department simply could not meet its burden of proof. The hearing officer was permitted to draw inferences and deductions from the facts before him or her (Evid. Code, § 600, subd. (b))[9]; given the complete absence of evidence as to when respondent's blood was drawn, however, there was no basis for an inference

[8]The failure to demonstrate the time respondent's blood was drawn also fatally undercuts the Department's argument that respondent's blood-alcohol level at the time of driving was proven by virtue of the rebuttable presumption stated in section 23152, subdivision (b), that the driver "had 0.08 percent or more, by weight, of alcohol in his or her blood at the time of driving the vehicle if the person had 0.08 percent or more, by weight, of alcohol in his or her blood at the time of performance of a chemical test within three hours after the driving." Even assuming the presumption should apply in administrative proceedings as well as in the criminal prosecutions to which it expressly applies, there is simply no evidence that respondent's blood was drawn within three hours of her driving. While the Department asks us to take judicial notice of the fact that the place of arrest and the hospital where the blood was drawn are only seven miles apart, such proximity provides no information regarding factors such as how long after her arrest respondent arrived at the hospital or how long a wait preceded the drawing of her blood.

It may be noted that even if respondent's blood was drawn within three hours of her arrest, the presumption stated in section 23152, subdivision (b), is a rebuttable one and respondent did offer evidence to rebut it. If the blood was drawn more than three hours after the arrest, the test results would reflect a blood-alcohol level lower than the maximum that had been reached before the alcohol began to dissipate; in this circumstance, however, the test results would not prove respondent's blood-alcohol level exceeded the legal limit at the time of driving, shortly after the alcohol was consumed and therefore at a time when her blood-alcohol level was still rising.

[9]Thus, for example, we are less troubled by the fact that the officer's sworn statement failed to recite the time respondent's driving was observed. In the absence of any evidence of significant delay between the observation and the time of the stop and arrest and proximity between the recorded site of the observation and point where respondent was stopped, the hearing officer could rationally infer the observation preceded the stop by a brief time. (*McKinney* v. *Department of Motor Vehicles, supra, ante,* p. 519.)

The Department's position that the hearing officer could reasonably infer respondent's blood-alcohol level exceeded the legal limit at the time of driving misses the point. The Department urges that "[a]bsent any evidence of drinking shortly before testing which might cause the [blood-alcohol concentration] level to be rising between driving and testing, it is a fair inference that the [blood-alcohol concentration] at the time of driving was at least as high

that respondent's blood-alcohol level was 0.08 or more percent at the time of driving.

■ While this conclusion imposes a foundational burden upon the Department, it is nevertheless consistent with our statements in *Imachi* v. *Department of Motor Vehicles, supra,* 2 Cal.App.4th at p. 816, and *McKinney* v. *Department of Motor Vehicles, supra, ante,* p. 519, that the Department need not present foundational evidence in every case regarding the test apparatus, administration of the test, and qualifications of the operator. (See *People* v. *Adams* (1976) 59 Cal.App.3d 559, 561 [131 Cal.Rptr. 190].) The type of foundational evidence discussed in *Imachi* and *McKinney* is not required in the absence of evidence the test was not properly performed because chemical tests to determine blood-alcohol concentration are performed by forensic laboratories which must comply with procedures set out in the California Code of Regulations governing licensing, collection and handling of samples, and methods of analysis. (Health & Saf. Code, § 436.50, Cal. Code Regs., tit. 17, §§ 1215-1220.4; *Imachi, supra,* 2 Cal.App.4th at p. 816.) Accordingly, the presumption of official duty regularly performed (Evid. Code, § 664) shifts the burden to the licensee to demonstrate improper procedures were followed in a given case. No presumption, however, can supply the missing information when the report of a chemical test result fails to indicate the time the sample was drawn.[10] Moreover, the burden we impose could hardly be easier to meet: The person who draws the blood sample need only record the time the sample is drawn and the Department need only provide this information at the administrative hearing.

## II.

■ The Department also contends the trial court erred in awarding respondent attorney fees under Government Code section 800. That statute authorizes an award of reasonable attorney fees where it is shown that an administrative decision "was the result of arbitrary or capricious action or conduct by a public entity or an officer thereof in his or her official capacity." The phrase "arbitrary or capricious action or conduct" encompasses " 'conduct not supported by a fair or substantial reason,' " "stubborn insistence on following unauthorized conduct" or a bad faith legal dispute

as at the time of testing because of the dissipation of alcohol in the blood over time." Evidence of a rising blood-alcohol level, however, is precisely what respondent presented.

[10]At oral argument counsel for the Department argued that the statutory presumption of official duty regularly performed supplies the necessary information because a provision of the appropriate regulations requires that a blood sample be drawn "as soon as feasible." (Cal. Code Regs., tit. 17, § 1219.1.) We cannot agree that this general admonition imposes any particular time requirement that can be assumed to have been met pursuant to the presumption codified by Evidence Code section 664.

(*Halaco Engineering Co.* v. *South Central Coast Regional Com.* (1986) 42 Cal.3d 52, 79 [227 Cal.Rptr. 667, 720 P.2d 15]; *Kreutzer* v. *County of San Diego* (1984) 153 Cal.App.3d 62, 78 [200 Cal.Rptr. 322]; *Reeves* v. *City of Burbank* (1979) 94 Cal.App.3d 770, 776, 779 [156 Cal.Rptr. 667]; *Madonna* v. *County of San Luis Obispo* (1974) 39 Cal.App.3d 57, 61-62 [113 Cal.Rptr. 916]), but not a bona fide legal dispute or simple erroneous decision. (*Seghesio* v. *County of Napa* (1982) 135 Cal.App.3d 371, 377 [185 Cal.Rptr. 224]; *Stirling* v. *Agricultural Labor Relations Bd.* (1987) 189 Cal.App.3d 1305, 1312 [235 Cal.Rptr. 56]; *Kreutzer* v. *County of San Diego, supra,* 153 Cal.App.3d at p. 78; *Healdsburg Police Officers Assn.* v. *City of Healdsburg* (1976) 57 Cal.App.3d 444, 457 [129 Cal.Rptr. 216].)

" 'The determination of whether an action is arbitrary or capricious is essentially one of fact, within the sound discretion of the trial court.' " (*Halaco Engineering Co.* v. *South Central Coast Regional Com., supra,* 42 Cal.3d at p. 79, quoting *Kreutzer* v. *County of San Diego, supra,* 153 Cal.App.3d at p. 78.) Here, the Department suspended respondent's driver's license without sufficient proof of the facts justifying suspension, then insisted on pursuing its case against her in the face of evidence highlighting the weakness of its proof without supplying easily obtainable missing information. We cannot find the award of attorney fees an abuse of discretion.

The judgment is affirmed.

Smith, J., and Peterson, J., concurred.

A petition for a rehearing was denied May 7, 1992, and respondent's petition for review by the Supreme Court was denied June 26, 1992.