[No. B129604. Second Dist., Div. Five. Jan. 19, 2000.]

DAVID ZINK, Plaintiff and Appellant, v.
STEVEN GOURLEY, as Director, etc., Defendant and Respondent.

**COUNSEL**

E. Bonnie Marshall for Plaintiff and Appellant.

Bill Lockyer, Attorney General, David P. Druliner, Chief Assistant Attorney General, Martin H. Milas, Assistant Attorney General, Silvia M. Diaz and J.T. Kerry, Deputy Attorneys General, for Defendant and Respondent.

**OPINION**

**GRIGNON, J.**—The Department of Motor Vehicles (DMV) is authorized to administratively suspend a driver's license if the individual refused to submit to chemical testing to determine blood-alcohol concentration or if the individual drove a motor vehicle with an excessive blood-alcohol concentration. Under certain circumstances, a suspension for excessive blood-alcohol concentration may be mitigated to a restricted license if the individual holds a commercial driver's license. The question presented in this appeal is whether a suspension for refusing to submit to chemical testing may also be mitigated to a restricted license if the individual holds a commercial driver's license. We conclude that it may not. We affirm the judgment of the trial court denying the driver's petition for writ of mandamus.

### FACTS AND PROCEDURAL BACKGROUND

Appellant David Zink was employed as a commercial driver and held a commercial driver's license. On May 17, 1998, Zink was driving his own personal car when police officers stopped him because they had reasonable cause to believe he had been driving under the influence of alcohol. At the time of the stop, Zink was not driving in the course and scope of his employment. After preliminary questioning, Zink refused to complete any field sobriety or chemical tests. The officers arrested him for driving under the influence. A blood test administered at a hospital, without Zink's consent, revealed a blood-alcohol concentration of 0.24 percent. At the time of his arrest, Zink had never previously been convicted of any alcohol-related driving offenses and had never previously had his license suspended or revoked.

Respondent DMV held an administrative hearing on July 29, 1998. The DMV suspended Zink's license effective August 26, 1998, to be returned after August 26, 1999. Zink filed a petition for writ of mandamus with the trial court on September 11, 1998. On October 6, 1998, the trial court stayed the administrative order of suspension, permitting the issuance of a restricted

license. After a hearing, the trial court denied the petition and dissolved the stay. Judgment was entered on December 24, 1998. Zink filed a timely notice of appeal.

DISCUSSION

*Standard of Review*

■ The DMV's suspension of driver's license is subject to judicial review. (Veh. Code, § 13559.)[1] The trial court exercises its independent judgment in determining whether the administrative decision is supported by the weight of the evidence. (*Santos v. Department of Motor Vehicles* (1992) 5 Cal.App.4th 537, 545 [7 Cal.Rptr.2d 10].) The appellate court reviews the trial court's decision for substantial evidence. (*Ibid.*) "Pure questions of law, however, are reviewed de novo." (*Foster v. Snyder* (1999) 76 Cal.App.4th 264, 267 [90 Cal.Rptr.2d 207].)

*Statutory Interpretation*

■ "In interpreting a statute, we apply the usual rules of statutory construction. 'We begin with the fundamental rule that our primary task is to determine the lawmakers' intent. [Citation.] . . . To determine intent, " 'The court turns first to the words themselves for the answer.' " [Citations.] "If the language is clear and unambiguous there is no need for construction, nor is it necessary to resort to indicia of the intent of the Legislature (in the case of a statute) . . . ." ' [Citation.] We give the language of the statute its 'usual, ordinary import and accord significance, if possible, to every word, phrase and sentence in pursuance of the legislative purpose. A construction making some words surplusage is to be avoided. The words of the statute must be construed in context, keeping in mind the statutory purpose . . . . Both the legislative history of the statute and the wider historical circumstances of its enactment may be considered in ascertaining the legislative intent.' " (*Kane v. Hurley* (1994) 30 Cal.App.4th 859, 862 [35 Cal.Rptr.2d 809].)

*Legislative History*

The Vehicle Code sets forth a complex and comprehensive scheme for the revocation, suspension, and restriction of drivers' licenses held by individuals involved in alcohol-related driving offenses. Prior to July 1, 1990, an

---

[1]All further statutory references are to the Vehicle Code provisions operative until July 1, 1999. The statutes were amended thereafter in ways which are not relevant to this appeal.

individual's privilege to operate a motor vehicle could be suspended or revoked if the individual was convicted of driving under the influence, was convicted of driving with an excessive blood-alcohol concentration, or refused to submit to one of the chemical tests required by the implied consent law[2] after a lawful arrest for driving under the influence. (§§ 13352, 13353.) A suspension for driving under the influence or driving with an excessive blood-alcohol concentration could be imposed only after a conviction. (§ 13352.) A suspension for refusal to submit to a chemical test could be imposed administratively after receipt of the officer's sworn statement of a lawful arrest for driving under the influence and refusal of a chemical test, and administrative review of the record. (§ 13353.) The refusal suspension period for a first offense was six months. (*Ibid.*) The refusal suspension was mandatory; there was no exception for occupational drivers. (*Murphy v. Department of Motor Vehicles* (1978) 86 Cal.App.3d 119, 121 [150 Cal.Rptr. 20].)

In 1989, the Legislature became concerned about the delay inherent in suspensions of driver's licenses tied to criminal convictions. The Legislature enacted legislation effective July 1, 1990, "directing and enabling administrative suspension by the DMV of the driver's license of any person arrested for operating a vehicle with [an excessive] blood-alcohol level . . . ." (*Peretto v. Department of Motor Vehicles* (1991) 235 Cal.App.3d 449, 452 [1 Cal.Rptr.2d 392].) Similar laws providing for administrative license suspension or revocation, so-called "administrative per se" laws, had been enacted in other states and had been reported to be an effective deterrent to driving under the influence. (*Ibid.*) The summary character of the "administrative per se" laws fostered public safety and facilitated the prompt removal of impaired drivers from the highways. (*Ibid.*) Senate Bill Nos. 1623 (1989) and 1150 (1990) were adopted by the Legislature and signed by the Governor.[3] The bills made a number of related amendments to the Vehicle Code, including the addition of sections 13353.2, 13353.3, and 13353.6. These new sections provided for administrative suspensions of drivers' licenses of individuals who had driven with an excessive blood-alcohol concentration. The bills also increased the period of suspension for a first refusal to submit to chemical testing from six months to one year and reduced the prohibited blood-alcohol concentration from 0.10 percent to 0.08 percent.

---

[2]Pursuant to the implied consent law (§ 23157), all drivers of motor vehicles are required to consent to a blood, breath, or urine blood-alcohol test when lawfully arrested for driving under the influence.

[3]We take judicial notice of the legislative history of Senate Bill No. 1623 (Stats. 1989, ch. 1460, §§ 1-25, pp. 6501-6521) and Senate Bill No. 1150 (Stats. 1990, ch. 431, §§ 1-23, pp. 1832-1851).

*Statutory Scheme*

First enacted in 1966, section 13353[4] provides that, if a person lawfully arrested for driving under the influence refuses to submit to a chemical test, the DMV shall suspend the individual's driver's license for one year for a first offense after receipt of the officer's sworn statement (§ 13353, subd. (a)) and administrative review of the record (§ 13353, subd. (c)). An individual whose driver's license has been administratively suspended for a refusal is entitled to an administrative hearing. "The person may request an administrative hearing pursuant to Section 13558. Except as provided in subdivision (e) of Section 13558, the request for an administrative hearing does not stay the order of suspension or revocation." (§ 13353, subd. (d).)

Section 13353.2[5] provides for the mandatory administrative suspension of an individual's driver's license if the individual drove with an excessive blood-alcohol concentration. "The department shall make a determination of the facts in subdivision (a) on the basis of the report of a peace officer submitted pursuant to Section 23158.2. The determination of the facts, after administrative review pursuant to Section 13557, by the department is final, unless an administrative hearing is held pursuant to Section 13558 and any judicial review of the administrative determination after the hearing pursuant to Section 13359 is final." (§ 13353.2, subd. (d).) The period of suspension for excessive blood-alcohol concentration is generally four months.

[4]Section 13353 provides in relevant part: "(a) If any person refuses the officer's request to submit to, or fails to complete, a chemical test or tests pursuant to Section 23157, upon receipt of the officer's sworn statement that the officer had reasonable cause to believe the person had been driving a motor vehicle in violation of Section 23140, 23152, or 23153, and that the person had refused to submit to, or did not complete, the test or tests after being requested by the officer, the department shall do one of the following: [¶] (1) Suspend the person's privilege to operate a motor vehicle for a period of one year. [¶] . . . [¶] The officer's sworn statement shall be submitted pursuant to Section 23158.2 on a form furnished or approved by the department. The suspension or revocation shall not become effective until 30 days after the giving of written notice thereof, or until the end of any stay of the suspension or revocation, as provided for in Section 13558. [¶] . . . [¶] (c) Upon receipt of the officer's sworn statement, the department shall review the record. For purposes of this section, the scope of the administrative review shall cover all of the following issues: [¶] (1) Whether the peace officer had reasonable cause to believe the person had been driving a motor vehicle in violation of Section 23140, 23152, or 23153. [¶] (2) Whether the person was placed under arrest. [¶] (3) Whether the person refused to submit to, or did not complete, the test or tests after being requested by a peace officer. [¶] (4) Whether, except for the persons described in subdivision (a) of Section 23157 who are incapable of refusing, the person had been told that his or her driving privilege would be suspended or revoked if he or she refused to submit to, or did not complete, the test or tests."

[5]Section 13353.2 provides in relevant part: "(a) The department shall immediately suspend the privilege of any person to operate a motor vehicle for any one of the following reasons: [¶] (1) The person was driving a motor vehicle when the person had 0.08 percent or more, by weight, of alcohol in his or her blood. . . ."

(§ 13353.3.)[6] However, the suspension is one year if: (1) the driver has suffered a separate alcohol-related driving conviction; (2) the driver has been administratively determined to have refused a required chemical test; or (3) the driver has been administratively determined to have driven with an excessive blood-alcohol concentration on a separate occasion.

Under certain circumstances, holders of commercial drivers' licenses subject to a four-month administrative suspension for excessive blood-alcohol concentration are treated differently. "The period of suspension of a person's privilege to operate a motor vehicle under Section 13353.2 [excessive blood-alcohol concentration suspension] is as follows: [¶] (1) Except as provided in Section 13353.6 . . . ." (§ 13353.3, subd. (b).) If the holder of a commercial driver's license drives a noncommercial vehicle with an excessive blood-alcohol concentration, and has suffered no separate alcohol-related driving convictions or license suspensions, the four-month suspension prescribed in section 13353.3, subdivision (b)(1) is mitigated to a 30-day suspension, followed by a five-month license restriction, entitling the individual to drive to and from, and in the course and scope of, employment. (§ 13353.6.)[7] "[T]he department shall, upon receiving the officer's sworn statement and the receipt of the person's driver's license and after review

---

[6]Section 13353.3 provides in relevant part: "(a) An order of suspension of a person's privilege to operate a motor vehicle pursuant to Section 13353.2 shall become effective 30 days after the person is served with the notice pursuant to Section 23137 or 23158.5, or subdivision (b) of Section 13353.2. [¶] (b) The period of suspension of a person's privilege to operate a motor vehicle under Section 13353.2 is as follows: [¶] (1) Except as provided in Section 13353.6, if the person has not been convicted of a separate violation of Section 23103, as specified in Section 23103.5, of Section 23140, 23152, or 23153, of Section 191.5 of the Penal Code, or of paragraph (3) of subdivision (c) of Section 192 of that code, the person has not been administratively determined to have refused chemical testing pursuant to Section 13353 or 13353.1, or the person has not been administratively determined to have been driving with an excessive concentration of alcohol pursuant to Section 13353.2 on a separate occasion, which offense or occurrence occurred within seven years of the occasion in question, the person's privilege to operate a motor vehicle shall be suspended for four months. [¶] (2) If the person has been convicted of one or more separate violations of Section 23103, as specified in Section 23103.5, of Section 23140, 23152, or 23153, of Section 191.5 of the Penal Code, or of paragraph (3) of subdivision (c) of Section 192 of that code, the person has been administratively determined to have refused chemical testing pursuant to Section 13353 or 13353.1, or the person has been administratively determined to have been driving with an excessive concentration of alcohol pursuant to Section 13353.2 on a separate occasion, which offense or occasion occurred within seven years of the occasion in question, the person's privilege to operate a motor vehicle shall be suspended for one year."

[7]Section 13353.6 provides: "(a) If the person's driver's license is a commercial driver's license, as defined in Section 15210, and if the person has not had a separate violation of Section 23103 as specified in Section 23103.5, Section 23152, or Section 23153 of this code, or Section 191.5 or paragraph (3) of subdivision (c) of Section 192 of the Penal Code which resulted in a conviction, and if the person's privilege to operate a motor vehicle has not been previously suspended or revoked pursuant to Section 13353 or 13353.2 for an offense which occurred on a separate occasion, notwithstanding Section 13551, the department shall, upon

pursuant to subdivision (d) of Section 13353.2, suspend the person's privilege to operate a motor vehicle for 30 days, and then reissue the person a commercial driver's license and endorsements with restrictions . . . ." (§ 13353.6, subd. (a).)

The suspension or revocation periods set forth for refusals and excessive blood-alcohol concentrations may not be shortened or mitigated by restricted licenses or hardship permits except as set forth in section 13353.6, subdivision (b) (commercial license), section 13353.7 (alcohol traffic school attendance), and section 13353.8 (minors with a critical need to drive).

*No Commercial License Mitigation of Mandatory Administrative Refusal Suspension*

■ Zink contends he is entitled to a restricted license pursuant to section 13353.6. He argues the commercial driver's license mitigation set forth in section 13353.6 is applicable to both excessive blood-alcohol concentration suspensions as well as refusal suspensions. We conclude the language of the statutory provisions, as well as their legislative history, preclude such a construction.

We look first to the statutory language. The excessive blood-alcohol concentration suspension is set forth in section 13353.2 and the periods of the excessive blood-alcohol concentration suspension are set forth in section 13353.3. The period of suspension for a first time excessive blood-alcohol concentration is prescribed as four months in subdivision (b)(1). That subdivision expressly references the commercial driver's license mitigation set forth in section 13353.6. It begins, "Except as provided in section 13353.6 . . . ." (§ 13353.3, subd. (b)(1).) Thus, the statutes expressly provide that the four-month suspension for a first time excessive blood-alcohol concentration is mitigated for holders of commercial drivers' licenses to a 30-day suspension succeeded by a five-month restricted license. The refusal suspension and the periods of suspension for refusal are set forth in section 13353. That section contains no reference to section 13353.6.

receiving the officer's sworn statement and the receipt of the person's driver's license and after review pursuant to subdivision (d) of Section 13353.2, suspend the person's privilege to operate a motor vehicle for 30 days, and then reissue the person a commercial driver's license and endorsements with restrictions, as follows: [¶] (1) The restricted commercial driver's license shall authorize the operation of a motor vehicle only to and from, and in the course and scope of, the person's employment. [¶] (2) The term of the restricted license is 30 days after the date that the order of suspension is effective pursuant to Section 13353.3 until six months after that date. [¶] (b) The person may be issued an unrestricted commercial driver's license after the term of restriction under this section. [¶] (c) This section applies only to the holder of a commercial driver's license who was not operating a commercial vehicle, as defined in Section 15210, at the time of the offense."

Just as the excessive blood-alcohol concentration suspension statutes make express reference to the commercial driver's license mitigation, so also does the commercial driver's license statute make express reference to the excessive blood-alcohol concentration suspension. Section 13353.6, subdivision (a) provides that, if certain conditions are satisfied, the DMV "shall, upon receiving the officer's sworn statement and the receipt of the person's driver's license *and after review pursuant to subdivision (d) of Section 13353.2,* suspend the person's privilege to operate a motor vehicle for 30 days, and then reissue the person a commercial driver's license and endorsements with restrictions, as follows[.]" (Italics added.) As noted previously, section 13353.2 concerns the administrative suspension of an individual's driver's license for excessive blood-alcohol concentration. Section 13353.6 includes no reference to the refusal suspension set forth in section 13353.[8]

If the statutory language were not sufficiently clear and unambiguous, the legislative history of the excessive blood-alcohol concentration suspension and the commercial driver's license mitigation confirm that the commercial driver's license mitigation provisions have no applicability to refusal suspensions. The administrative refusal suspension provisions were first enacted in 1966. For more than 20 years they remained in effect with no statutory or judicial exceptions for occupational drivers or holders of commercial drivers' licenses. In 1989, the Legislature determined that it should enact "administrative per se" laws, which would permit the immediate administrative suspension of driver's licenses for excessive blood-alcohol concentration without the necessity of a criminal conviction. There was concern, however, that an immediate four-month suspension would constitute a particularly harsh penalty for occupational drivers.[9] Thus, it was suggested that an exception be made for commercial drivers so they would not lose their jobs as a result of a first offense unrelated to their occupational driving. The commercial driver's license mitigation was adopted by the Legislature solely in connection with the adoption of provisions for the administrative suspension of drivers' licenses on the basis of excessive blood-alcohol concentration. (Legis. Counsel's Dig., Sen. Bill No. 1623 (1989-1990 Reg. Sess.).)[10]

---

[8]The original drafts of section 13353.6 referred to the administrative review pursuant to section 13353, subdivision (c), the refusal suspension review. This was corrected in the May 15, 1989 amendments to Senate Bill No. 1623.

[9]Gerald O'Hara, Director, California Teamsters Public Affairs Council, memorandum to Senate Judiciary Committee re Senate Bill No. 1623, April 13, 1989.

[10]In 1993, section 13353.6 was amended in ways that are not relevant to this appeal (Assem. Bill No. 732, Stats. 1993, ch. 206, §§ 1-2, pp. 1527-1530). The Legislative Counsel's Digest explains existing law so as to make section 13353.6 applicable to refusal suspensions. We are not persuaded that this after-the-fact explanation is a correct statement of existing law.

Refusal suspensions are qualitatively different from excessive blood-alcohol concentration suspensions. It has long been recognized that convictions for driving under the influence are difficult to obtain in the absence of a chemical determination of the driver's blood-alcohol concentration. Thus, the implied consent law and the administrative refusal suspension are utilized to encourage compliance with the requirement of chemical testing of suspected impaired drivers. One who has been advised of the requirement for testing and the consequences of a refusal, who nevertheless refuses to submit to chemical testing, loses his or her license for a designated period regardless of whether he or she was actually driving under the influence.

Legislative recognition of the seriousness of refusals of chemical tests is found in the 1989 and 1990 legislation adopting the "administrative per se" laws. The 1989 legislation continued the refusal suspension periods of six months for a first offense, one year for a second offense, and two years for a third offense. Excessive blood-alcohol concentration suspensions were four months for a first offense and one year for subsequent offenses. The 1990 amendments increased the periods for refusal suspensions to one year, two years, and three years respectively. The increase was a direct response to a concern that similar suspension periods for refusals and excessive blood-alcohol concentrations would diminish the disincentive to refuse chemical testing.[11]

Finally, common sense dictates a conclusion that the commercial driver's license mitigation provisions are inapplicable to refusal suspensions. In the case of excessive blood-alcohol concentration suspensions, a four-month actual suspension is partially mitigated to a 30-day actual suspension succeeded by a five-month restricted license. The overall period of suspension and restriction is lengthened from four months to six months, but the individual is allowed to drive occupationally after a shorter period of actual suspension. The refusal suspension period, however, is one year. Application of the commercial driver's license mitigation would not only permit the individual to drive occupationally, but would shorten the overall period of suspension and restriction by half. This could not have been the intent of the Legislature.

*Conclusion*

In this case, Zink's license was suspended by the DMV for one year pursuant to section 13353 for his refusal to submit to blood-alcohol testing. The one-year suspension is mandatory and not mitigated by the commercial driver's license provisions of section 13353.6. Accordingly, the trial court did not err when it denied Zink's petition for writ of mandamus.

---

[11]Senate Committee on the Judiciary, Senate Bill No. 1150, January 9, 1990.

## DISPOSITION

The judgment is affirmed. Respondent Department of Motor Vehicles is awarded its costs on appeal.

Turner, P. J., and Armstrong, J., concurred.