Filed 12/12/14; pub. order 1/12/15 (see end of opn.)

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

THIRD APPELLATE DISTRICT

(Mono)

----

| | |
|---|---|
| CHARLES JAMES PIPER, | C074525 |
| Plaintiff and Respondent, | (Super. Ct. No. CV130049) |
| v. | |
| DEPARTMENT OF MOTOR VEHICLES, | |
| Defendant and Appellant. | |

The Department of Motor Vehicles (DMV) appeals from a judgment granting a petition for writ of ordinary mandate compelling it to set aside its calculation of the period of postconviction suspension of licensee Charles James Piper (Piper), contending the trial court misconstrued the statutes governing the interplay of suspensions due to administrative actions by the DMV and criminal actions in drunk driving (DUI) cases. We agree with the DMV, and therefore shall reverse with directions to deny the writ.

1

## BACKGROUND[1]

After Piper was arrested for DUI on July 4, 2012, he was issued an administrative per se suspension notice, alleging his blood alcohol reading exceeded .08 percent. After a hearing, DMV suspended his driver's license effective September 19, 2012, through January 18, 2013 (four months). (Veh Code, § 13353.3, subd. (b)(1);[2] see *Zink v. Gourley* (2000) 77 Cal.App.4th 774, 779-780 & fn. 6 (*Zink*).) The written order states in capital letters: "THIS ACTION IS INDEPENDENT OF ANY OTHER ACTION TAKEN BY THE COURT OR THIS DEPARTMENT." (See *Robertson v. Department of Motor Vehicles* (1992) 7 Cal.App.4th 938, 948-949 (*Robertson*).)

After 51 days, Piper applied for and received a restricted license that allowed him to drive to and from work and his mandatory first DUI offender class. DMV reinstated his full, unrestricted, driving privileges on March 19, 2013.

One day before the reinstatement, on March 18, 2013, Piper was convicted of DUI (§ 23152, subd. (b) [driving with .08 percent or more of alcohol]), based on the same incident.[3] DMV again suspended his license, by order dated April 2, 2013, which provided he could again apply for a restricted license, but his license could not be reinstated until September 18, 2013, six months after his conviction. (§ 13352, subd. (a)(1).) Piper sought a writ of mandate compelling the DMV to credit him for the first suspension, so that "the total period of suspension shall not exceed the longer of the two

---

[1] Some of the facts stated by the parties are not supported by the portions of the record before us, but are agreed upon in the briefing. We treat these agreed upon facts as accurate. (See *County of El Dorado v. Misura* (1995) 33 Cal.App.4th 73, 77.)

[2] Further undesignated statutory references are to the Vehicle Code.

[3] It is apparent from the record that the length of time between Piper's arrest and conviction (July 2012 to March 2013) was considered a significant delay in his county of conviction, which the trial court took into consideration in its ruling as we briefly discuss *post*.

suspension periods." However, the DMV credited Piper with only the 51 days his license was suspended before he asked for and received a restricted license based on his first (administrative) suspension. Piper received a restricted license after his second (postconviction) suspension, which again allowed him to drive to and from DUI classes and work. (See § 13352.4, subd. (a).) However, he alleged: The DMV "has conceded Petitioner is entitled to serve the entirety of his second suspension with a restricted license yet refuses to credit Petitioner with exactly the same restricted license terms with which Petitioner already complied during his first suspension. In other words, [DMV]'s position seems to be that Petitioner's restricted license counts toward his second (current) suspension but not toward his first suspension."

Based on these facts, the trial court found Piper was "treated in an arbitrary and capricious fashion simply because of the unusually lengthy time lapse between his arrest and administrative suspension pursuant to [] § 13353.2, and his eventual conviction and resultant suspension pursuant to [] § 13352." Concluding that DMV "has an affirmative duty to run Petitioner's two suspensions for the same incident concurrently," the court issued a writ of mandate compelling DMV to reinstate Piper's driving privileges.[4]

The DMV timely filed this appeal from the judgment granting the writ.

**DISCUSSION**

I

*Relevant Law Regarding License Suspension and Restriction*

A person arrested for DUI is subject to immediate administrative license suspension, and notice of this suspension is typically given by the arresting officer, with

---

[4] The writ was not sought under Code of Civil Procedure section 1094.5, to overturn DMV's administrative decision, but under Code of Civil Procedure section 1085, to compel DMV to perform a ministerial duty. (See *Carrancho v. California Air Resources Board* (2003) 111 Cal.App.4th 1255, 1264-1265.) The parties agree the case presents a question of law, subject to de novo review.

3

instructions on how to challenge the suspension before its effective date. (§ 13353.2; see *Robertson*, *supra*, 7 Cal.App.4th at pp. 941-942, 948-949; Pacheco, *Admin Per Se for the Practitioner* (1993) 24 Pacific L.J. 461, 464-465.) Absent aggravating circumstances (e.g., prior DUI convictions), this administrative license suspension period is four months. (§ 13353.3, subd. (b)(1).)

Absent aggravating circumstances, or a court order finding a risk to public safety, a driver with an administratively suspended license may apply for a "restricted" license, to allow the driver to attend DUI classes and drive to and from work. Such a restricted license is issued for five months. (§ 13353.7, subd. (a)(3).) However, a restricted license is suspended "immediately" if the driver fails to participate in the DUI classes, (§ 13353.7, subd. (a)(4)), and "upon a conviction of" DUI, DMV "shall suspend or revoke" the license pursuant to section 13352. (§ 13353.7, subd. (b).)

Separately, a person convicted for DUI is subject to a license suspension triggered by the conviction itself. (§§ 13352, subd. (a)(1), 23536, subd. (c).) Absent aggravating factors, this suspension period is six months. (§ 13352, subd. (a)(1).) A trial court may, upon finding of a risk to public safety, order the DMV *not* to issue the driver a restricted license during this postconviction suspension time. (§§ 13352.4, subd. (h), 23536, subd. (d), 23538, subd. (a)(3).) (Here, Piper was permitted to apply for a restricted license after the suspension based on his criminal conviction.)

Generally, the criminal and administrative proceedings "are completely unrelated." (Taylor & Tayac, Cal. Drunk Driving Defense (4th ed. 2008) The Administrative Suspension, § 4.5, p. 133.) However, an *acquittal* in the criminal case-- not merely the failure to file charges or the dismissal of charges--requires the DMV to "immediately reinstate" a suspended license. (§ 13353.2, subd. (e); see *Helmandollar v. Department of Motor Vehicles* (1992) 7 Cal.App.4th 52, 54, 56-57.)

According to a leading practice guide, "Where suspension or revocation orders arising out of the same arrest are made in both the criminal and [DMV] action, the orders

4

shall run concurrent with each other in such a manner that the total suspension or revocation time does not exceed the longer of the two. CVC § 13353.3(c)." (Burglin, et al., Cal. Drunk Driving Law (2010 rev. ed.) DMV Proceedings, § 11:166, pp. 11:76-77.)

The subdivision referenced by the treatise provides in full: "If a person's privilege to operate a motor vehicle is suspended pursuant to Section 13353.2 and the person is convicted of a violation of Section 23152 or 23153, including, but not limited to, a violation described in Section 23620, arising out of the same occurrence, both the suspension under Section 13353.2 [the administrative action] and the suspension or revocation under Section 13352 [the postconviction action] shall be imposed, except that the periods of suspension or revocation shall run concurrently, and the total period of suspension or revocation shall not exceed the longer of the two suspension or revocation periods." (§ 13353.3, subd. (c).)

We observe that this statute makes no reference to *restricted* license periods, but refers to only suspended and revoked license periods.

Some pertinent terms are defined in the Vehicle Code. "When used in reference to a driver's license, 'revocation' means that the person's privilege to drive a motor vehicle is terminated and a new driver's license may be obtained after the period of revocation." (§ 13101.) "When used in reference to a driver's license, 'suspension' means that the person's privilege to drive a motor vehicle is temporarily withdrawn." (§ 13102.) But no explicit definition of a "restricted" license is provided in the Vehicle Code.

II

*Analysis of Piper's Claim*

A. *Statutory Entitlement to Concurrent Credit*

Piper's claim is that "restriction" is a subspecies of "suspension" and the time he was driving on a restricted license equates to a period of suspension for which he is entitled to concurrent credit (§ 13353.3, subd. (c)), not merely the 51 days for which his license was under so-called "hard" suspension.

5

The DMV disagrees that a suspended license necessarily includes a restricted license, and argues that: "While no statute specifically defines 'restriction,' the types of restricted driving privileges are illustrative of the term's meaning. For example, the Vehicle Code provides for restrictions of driving with corrective lenses, against freeway driving, to only drive minor children to and from school, to drive [to] and from work, and to drive to and from treatment programs. [Citations.] The particular restriction is based on the type of license, ability to drive, medical limitations, age, and the needs of the individual. With each restriction, the driver has *some* driving privileges, which is not the case with a suspension." We agree with this view.

As set forth *ante*, the statute permitting a restricted license extends the period of limited privileges to five months--one month beyond the administrative suspension period of four months--and provides that the *restricted* license will be *suspended* if the driver fails to participate in DUI classes or is convicted of a DUI. This signals that "restriction" is not merely a type of "suspension."

Our conclusion is bolstered by the fact that the Legislature has chosen to use "restriction" in some statutes, but not others. "Where a statute referring to one subject contains a critical word or phrase, omission of that word or phrase from a similar statute on the same subject generally shows a different legislative intent." (*Craven v. Crout* (1985) 163 Cal.App.3d 779, 783; see *Tyrone W. v. Superior Court* (2007) 151 Cal.App.4th 839, 850.)

As noted earlier, section 13353.3, subdivision (c), partly provides: "If a person's privilege to operate a motor vehicle is suspended pursuant to Section 13353.2 and the person is convicted of a violation of Section 23152 . . . arising out of the same occurrence, both the suspension under Section 13353.2 and the suspension or revocation under Section 13352 shall be imposed, except that the periods of suspension or revocation shall run concurrently, and *the total period of suspension or revocation* shall

6

not exceed the longer of the two suspension or revocation periods." (§ 13353.3, subd. (c), italics added.)

But section 13353, subdivision (f), pertaining to administrative actions arising from refusing to submit to chemical testing, partly provides: "The suspension or revocation imposed . . . shall run concurrently with any *restriction,* suspension, or revocation imposed . . . that resulted from the same arrest." (Italics added.)

This inclusion of "restriction" in section 13353, subdivision (f), but absence of it from section 13353.3, subdivision (c), when both statutes describe how different driving privilege impairments should be treated, shows that the Legislature draws a distinction between "restriction" and "suspension" in the specific context of when periods of suspension shall run concurrently. If the Legislature had meant to include periods of "restriction" in section 13353.3, subdivision (c) it would have used language similar to section 13353, subdivision (f), which also addresses the subject of concurrency of different periods of licensure impairment. That it did not use the term "restriction" in the former suggests it intended a different meaning in the latter.

Such distinctions have appeared in other statutes. Commercial licensees subject to a four-month administrative suspension for high blood alcohol may mitigate it "to a 30-day suspension, followed by a five-month license restriction, entitling the individual to drive to and from, and in the course and scope of, employment." (*Zink, supra,* 77 Cal.App.4th at p. 780, citing former § 13353.6.) As this example illustrates, the Legislature is able to differentiate between suspension and restriction.

Therefore, we reject Piper's view that section 13353.3, subdivision (c) entitled him to full concurrency for the period his license was merely restricted.

B. *Arbitrariness*

The fact, as found by the trial court and not disputed by the parties, that there was an unusual delay in Piper's criminal case does not mean that the DMV acted improperly or arbitrarily. (See, e.g. 9 Ops.Cal.Atty.Gen. 11, 12 (1947) [rejecting view that delay in

7

sending DMV the abstract of conviction alters DMV's duty to suspend license upon receipt thereof].) The DMV was not a party to the criminal case and had no ability to hasten it. (See *Brierton v. Department of Motor Vehicles* (2006) 140 Cal.App.4th 427, 439-440.) Nor does Piper point to any statute requiring DMV to delay its administrative action until the end of the criminal proceedings; to the contrary, DMV is required to "immediately" suspend the license of a person driving with high blood alcohol, subject to the driver's right to a hearing and judicial review. (§ 13353.2, subds. (a)-(d).)

Piper relies heavily on two older cases that, on inspection, do not support him. As Piper interprets *Robertson* and *Fearn v. Zolin* (1992) 9 Cal.App.4th 1756, they allowed a type of concurrent credit for the restricted licensing period towards the period of suspension. But in each case, the suspension period was the *controlling* disposition (*Fearn*, at p. 1760; *Robertson*, *supra*, 7 Cal.App.4th at p. 948), that is, the one that took precedence over the restriction period. In each case, the driver had to complete the full 12-month period of DMV administrative suspension, which was credited toward the longer restricted period imposed by the trial courts via the probation orders in each case. In neither case was the *restricted* period used to lessen the *suspension* period. The fact a suspension period "counts" towards a restricted period does not compel a finding that a restricted period must "count" towards a suspended period.

As the DMV points out, in each of those cases the courts applied subdivision c, section 13353.3 appropriately by giving each driver credit for his original 12-month suspension period because during those 12 months each was denied all driving privileges. "Similarly here, DMV gave [Piper] credit for the amount of time that [his driving privileges were] actually suspended (51 days). He did not receive credit for the time that

the suspension was not the controlling disposition, i.e., the four months he had the privilege to drive with restrictions."[5]

The trial court found DMV "allows for credit for the second restricted portion of the suspension pursuant to [] § 13352. [¶] If the second restriction is merely a category of suspension so must the first restriction such that [] § 13353.3 requires them to be run concurrently." The trial court's point was that if DMV credited Piper with 51 days of his "hard" administrative suspension towards his period of restricted driving after his postconviction suspension, then a restriction really *is* a form of suspension, and it is illogical for DMV not to treat it as such for all purposes.

We disagree. Section 13352.4, which allows for postconviction restricted licenses in lieu of suspensions, defines when the postconviction suspension restriction begins and provides that it "shall remain in effect until the final day of the original suspension imposed" under section 13352 "and may include credit for any suspension period served under subdivision (c) of Section 13353.3." (§ 13352.4, subd. (b).) This is the statute the trial court apparently relied on. But by its terms the reference to "the final day of the original suspension imposed" merely marks the end of the period of restriction, and does not mean that a restricted license is a type of suspended license.

Piper concedes he was given 51 days credit towards his postconviction suspension for the preconviction period during which his license was suspended, before he asked for and received a restricted license. He was entitled to no additional credit.

Based on the statutory scheme, we see no mandatory duty that DMV failed to carry out. Accordingly, Piper is not entitled to writ relief.

---

[5] And, as the DMV points out, both cases were decided before the enactment of section 13352.4, which first required DMV to suspend the license of persons not in compliance with probation orders requiring DUI classes (Stats. 1994, ch. 938, § 1, p. 5512) and, operative September 20, 2005, provides for issuance of restricted licenses after a DUI conviction (see Stats. 2004, ch. 551, § 5, pp. 4433-4434).

9

## DISPOSITION

The judgment is reversed with directions to deny Piper's writ petition.  Piper shall pay DMV's costs on appeal.  (Cal. Rules of Court, Rule 8.278(a)(2).)


                                                         DUARTE            , J.



We concur:



        BUTZ            , Acting P. J.



        MAURO          , J.

10

Filed 1/12/15

CERTIFIED FOR PUBLICATION


IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

THIRD APPELLATE DISTRICT

(Mono)

----


| | |
|---|---|
| CHARLES JAMES PIPER, | C074525 |
| Plaintiff and Respondent, | (Super. Ct. No. CV130049) |
| v. | ORDER CERTIFYING OPINION FOR PUBLICATION |
| DEPARTMENT OF MOTOR VEHICLES, | |
| Defendant and Appellant. | |


THE COURT:

The opinion in the above-entitled matter filed December 12, 2014, was not certified for publication in the Official Reports. For good cause it appears now that the opinion should be published in the Official Reports and it is so ordered.

BY THE COURT:


     MAURO     , Acting P. J.


     DUARTE     , J.


1

EDITORIAL LISTING


        APPEAL from a judgment of the Superior Court of Mono County, Stan Eller, Judge.  Reversed with directions.

        Kamala D. Harris, Attorney General, Alicia M.B. Fowler, Senior Assistant Attorney General, Judith A. Recchio, Supervising Deputy Attorney General, Shanna M. Thomas, Deputy Attorney General, for Defendant and Appellant.


        Law Offices of Peter C. Bronson and Peter C. Bronson; Law Offices of Timothy B. Sanford and Timothy B. Sanford, for Plaintiff and Respondent.