[No. H012768. Sixth Dist. Dec. 7, 1995.]

HELEN ROELFSEMA, Plaintiff and Respondent, v.
DEPARTMENT OF MOTOR VEHICLES, Defendant and Appellant.

COUNSEL

Daniel E, Lungren, Attorney General, Robert R. Buell and Heidi T. Salerno, Deputy Attorneys General, for Defendant and Appellant.

Linda McNeil for Plaintiff and Respondent.

OPINION

**ELIA, J.**—The trial court granted a writ of mandate directing the Department of Motor Vehicles (DMV) to reinstate respondent Helen Roelfsema's driving privileges following her arrest at a sobriety checkpoint. The court reasoned that the DMV failed to establish the lawfulness of the sobriety

checkpoint by proving the eight factors set forth in *Ingersoll* v. *Palmer* (1987) 43 Cal.3d 1321 [241 Cal.Rptr. 42, 743 P.2d 1299]. On appeal, we hold that the DMV is not required to prove the lawfulness of the sobriety checkpoint unless the licensee raises the issue. Since respondent failed to do so, her claim must fail. Accordingly, we will reverse the judgment.

### Factual and Procedural Background

On September 10, 1993, at 10:55 p.m., in Palo Alto, California, Officer Van Otten of the California Highway Patrol stopped respondent at a sobriety checkpoint. Upon contacting respondent, the officer observed signs of intoxication. Specifically, respondent's breath smelled of alcohol, her eyes were red, watery, and glassy, and she failed the field sobriety tests. The officer arrested respondent at 11:05 p.m. for violation of Vehicle Code section 23152.[1] At 11:55 p.m., respondent submitted to a blood test that reported her blood-alcohol content to be 0.21 percent. The officer issued an "Administrative Per Se Order of Suspension/Revocation Temporary License Endorsement," ordering that respondent's privilege to operate a motor vehicle be suspended in 30 days.

Respondent requested an administrative hearing with the DMV. The hearing was held on October 7, 1993. The DMV hearing officer presented and admitted, over respondent's objections, the sworn statement of Officer Van Otten, the temporary license, and the blood test results. Van Otten's statement provided, "While working a DUI check point, I observed the driver in a vehicle. Upon contact, I smelled the odor of an alcoholic beverage and the Subj.'s eyes were red, watery and glassy. Subj. failed F.S.T.'s/did not complete." Officer Van Otten testified that there was no arrest warrant. On October 8, 1993, the DMV issued the order sustaining the suspension of respondent's driving privilege for four months.

On October 23, 1993, respondent petitioned for a writ of mandate requesting that the trial court set aside the administrative decision. The DMV filed its answer on November 19, 1993. Argument was heard on December 10, 1993. The court granted the petition on the grounds that the arrest was unlawful because the DMV did not prove that the sobriety checkpoint had been publicized in advance.

On January 5, 1994, the DMV filed a motion to reconsider order granting petition for writ of mandate in light of *People* v. *Banks* (1993) 6 Cal.4th 926

---

[1]Vehicle Code section 23152 provides in pertinent part: "(a) It is unlawful for any person who is under the influence of any alcoholic beverage or drug, or under the combined influence of any alcoholic beverage and drug, to drive a vehicle. [¶] (b) It is unlawful for any person who has 0.08 percent or more, by weight, of alcohol in his or her blood to drive a vehicle."

[25 Cal.Rptr.2d 524, 863 P.2d 769]. *Banks* held that advance publicity is not a constitutional prerequisite to the operation of a sobriety checkpoint. (*Banks, supra,* 6 Cal.4th at p. 931.) Argument was heard on January 7, 1994. The motion to reconsider was denied on the grounds that the DMV failed to establish the remaining factors in *Ingersoll.* Judgment was entered on June 20, 1994. The DMV filed a timely appeal.

### Standard of Review

■ "Upon the driver's timely request, the Department must hold an administrative hearing at which the evidence is not limited to that presented at the prior administrative review. [Citation.] The Department's determination is then subject to judicial review. [Citation.] The trial court must conduct its review on the record of the hearing and may not consider other evidence. [Citation.] The task for the trial court is to determine, exercising its independent judgment, whether the administrative decision was supported by the weight of the evidence. [Citations.] On appeal, the only question is whether substantial evidence supports the trial court's decision. [Citations.]" (*Santos* v. *Department of Motor Vehicles* (1992) 5 Cal.App.4th 537, 545 [7 Cal.Rptr.2d 10].)

### Discussion

■ Respondent claims the DMV must prove the constitutionality of a sobriety checkpoint as part of its "prima facie" case in a proceeding pursuant to Vehicle Code section 13558. The trial court agreed, relying upon *Ingersoll* v. *Palmer, supra,* 43 Cal.3d 1321. As we shall explain, the trial court erred. The DMV does not have to prove the constitutionality of every sobriety checkpoint in every section 13558 license suspension hearing it considers.

We begin with *Ingersoll* v. *Palmer.* In *Ingersoll,* the California Supreme Court considered whether sobriety checkpoints were constitutional. Petitioners[2] argued that the validity of the sobriety checkpoint should be analyzed under the standard set out in *In re Tony C.* (1978) 21 Cal.3d 888 [148 Cal.Rptr. 366, 582 P.2d 957], "requiring an individualized suspicion of wrongdoing." (*Ingersoll* v. *Palmer, supra,* 43 Cal.3d 1321, 1327.) ■ Rejecting this contention, *Ingersoll* explained that the primary purpose of a sobriety checkpoint is *not* to detect evidence of crime or arrest drunk drivers but to "promote public safety by deterring intoxicated persons from driving on the public streets and highways." (*Id.* at p. 1328.) Given this purpose, *Ingersoll* found that the propriety of sobriety checkpoints should be assessed

---

[2]The *Ingersoll* petitioners were California taxpayers seeking to prohibit sobriety checkpoints in California.

under the *standard applicable to investigative detentions and inspections occurring as part of a regulatory scheme in furtherance of an administrative purpose*, and *not* by the standard applying to traditional criminal investigative stops. (*Ibid.*) *Ingersoll* also noted that the *In re Tony C.* court "expressly recognized that individualized suspicion that the contactee is involved in criminal activity is *not* required in certain types of police-citizen contacts." (*Ingersoll* v. *Palmer*, *supra*, 43 Cal.3d 1321, 1330, italics added.)

Having made this distinction, *Ingersoll* next examined various types of seizures which did *not* require "reasonable suspicion." *Ingersoll* discussed airport security screening searches, building inspections, and border patrol checkpoint inspections. With respect to border patrol searches, the court discussed *United States* v. *Martinez-Fuerte* (1976) 428 U.S. 543 [49 L.Ed.2d 1116, 96 S.Ct. 3074], and emphasized that *Martinez-Fuerte* held that no warrant was required for such searches: "The need to provide an assurance of legitimacy of the search/seizure required a warrant in the building inspection context, but that need was served alternatively in the checkpoint operation by the visible manifestation of authorization in the form of signs announcing the roadblock, official insignia and vehicles, and fully uniformed personnel." (*Ingersoll* v. *Palmer*, *supra*, 43 Cal.3d at pp. 1333-1334.) After analyzing these decisions, *Ingersoll* concluded that "stops and inspections for regulatory purposes may be permitted if undertaken pursuant to predetermined specified neutral criteria [citation] such as the criteria for a checkpoint stop [citation]." (*Id.* at p. 1335.)

Having so concluded, *Ingersoll* then assessed the constitutional reasonableness of the sobriety checkpoint by "weighing the gravity of the governmental interest or public concern served and the degree to which the program advances that concern against the intrusiveness of the interference with individual liberty." (*Ingersoll* v. *Palmer*, *supra*, 43 Cal.3d at p. 1338.) ■ In examining the intrusiveness of such checkpoints, the *Ingersoll* court identified eight factors to "provide functional guidelines for minimizing the intrusiveness of the sobriety checkpoint stop." (*Ingersoll*, *supra*, 43 Cal.3d at p. 1341.) These factors are: (1) decisionmaking at the supervisory level; (2) limits on discretion of field officers as to who is to be stopped; (3) maintenance of safety conditions; (4) reasonable location of the checkpoint; (5) a reasonable time and duration of the checkpoint; (6) indicia of the official nature of the roadblock; (7) the length and nature of the detention; and (8) advance publicity regarding each checkpoint. (*Ingersoll*, *supra*, 43 Cal.3d at pp. 1341-1347.)

*Ingersoll* concluded, "while the intrusiveness of a sobriety checkpoint is not trivial, the enumerated safeguards operate to minimize the intrusiveness to the extent possible. . . . [¶] On balance, the intrusion on Fourth

Amendment interests is sufficiently circumscribed so that it is easily outweighed and justified by the magnitude of the drunk driving menace and the potential for deterrence." (*Ingersoll* v. *Palmer, supra*, 43 Cal.3d at p. 1347.)

Three years after the *Ingersoll* decision, the United States Supreme Court considered the constitutionality of sobriety checkpoints in *Michigan Dept. of State Police* v. *Sitz* (1990) 496 U.S. 444 [110 L.Ed.2d 412, 110 S.Ct. 2481]. The court went through the same balancing test as *Ingersoll*, and it also concluded that sobriety checkpoints were constitutional.

Subsequently, in *People* v. *Banks, supra*, 6 Cal.4th 926, the California Supreme Court revisited the sobriety checkpoint issue. In *Banks*, the court considered whether advance publicity, which is one of the *Ingersoll* guidelines, was a constitutional prerequisite to the operation of a sobriety checkpoint. In addressing the issue, the court again emphasized that " 'federal constitutional principles require a showing of *either* the officer's reasonable suspicion that a crime has occurred or is occurring *or, as an alternative, that the seizure is "carried out pursuant to a plan embodying explicit, neutral limitations on the conduct of individual officers*." [Citations.]' " (*People* v. *Banks, supra*, 6 Cal.4th at p. 936, latter italics added.)

In accordance with *Michigan Dept. of State Police* v. *Sitz, supra*, 496 U.S. 444, *Banks* concluded, "the operation of a sobriety checkpoint conducted in the absence of advance publicity, but otherwise in conformance with the guidelines we established in *Ingersoll* v. *Palmer* [citation] *does not result in an unreasonable seizure within the meaning of the Fourth Amendment to the United States Constitution*." (*People* v. *Banks, supra*, 6 Cal.4th at p. 949, italics added.)[3]

As *Ingersoll* makes clear, sobriety checkpoints are constitutional so long as certain guidelines are followed. The eight factors identified in *Ingersoll* provide "functional guidelines" to assess the intrusiveness of a checkpoint. However, the absence of one factor, such as the failure to provide advance publicity, does not necessarily mean the checkpoint is unconstitutional. (*People* v. *Banks, supra*, 6 Cal.4th at p. 949.)

Since sobriety checkpoints are constitutional, we must now consider how those checkpoints mesh with the Vehicle Code license suspension scheme.

---

[3]The court noted that its discussion was limited to the advance publicity issue and that it was not revisiting the broader questions addressed in *Ingersoll* and *Sitz* concerning the constitutionality generally or the effectiveness of sobriety checkpoints. Further, "nothing in our decision should be construed to suggest that any of the eight guidelines set forth in *Ingersoll*, including advance publicity [citation] are not *relevant* to a consideration of the intrusiveness of a sobriety checkpoint stop." (*People* v. *Banks, supra*, 6 Cal.4th at p. 934, fn. 3, italics in original.)

Vehicle Code section 13558[4] authorizes the licensee to request an administrative hearing regarding a section 13353.2 license suspension.[5] At such hearing, "[t]he only issues . . . shall be those facts listed in paragraph (2) of subdivision (b) of Section 13557." (§ 13558, subd. (c)(2).)

Section 13557, subdivision (b)(2) provides in pertinent part that "If the department determines in the review of a determination made under Section 13353.2, by the preponderance of the evidence, all of the following facts, the department shall sustain the order of suspension or revocation . . . : [¶] (A) That the peace officer had reasonable cause to believe that the person had been driving a motor vehicle in violation of Section 23136, 23140, 23152, or 23153. [¶] (B) That the person was placed under arrest or, if the alleged violation was of Section 23136, that the person was lawfully detained. [¶] (C) That the person was driving a motor vehicle under any of the following circumstances: (i) When the person had 0.08 percent or more, by weight, of alcohol in his or her blood."

In this case, respondent requested a hearing to consider the three issues under section 13557. At the hearing, the DMV submitted the "Officer's Statement." The arresting officer stated: "While working a DUI check point, I observed the driver in a vehicle. Upon contact, I smelled the odor of an alcoholic beverage and the Subj.'s eyes were red, watery and glassy. Subj. failed F.S.T.'s/did not complete." The breath test printout was also admitted, and the arresting officer testified. The arresting officer testified that the "Officer's Statement" was completed and signed by him at or near the time of the incident.

■ "An officer's statement reporting firsthand observations—objective symptoms of intoxication, circumstances of a driver's refusal to submit to a chemical test, or results of a personally administered breath test—falls within the public employee records exception to the hearsay rule. [Citations.]" (*Santos* v. *Department of Motor Vehicles, supra,* 5 Cal.App.4th 537, 546.) Under the exception, a writing recording an act, condition or event is admissible if the writing was: (1) made by and within the scope of duty of a public employee; (2) at or near the time of the act, condition or event; and (3) the sources of information and method and time were such as to indicate its trustworthiness. (Evid. Code, § 1280; *Santos* v. *Department of Motor Vehicles, supra,* 5 Cal.App.4th at pp. 546-547.)

In this case, the officer stated that he was "working a DUI checkpoint." Under the hearsay exception above, this statement shows the officer "was

---

[4]All unspecified statutory references are to the Vehicle Code.

[5]Section 13353.2 provides, among other things, that the DMV shall immediately suspend a person's privilege to operate a motor vehicle if the person was driving with .08 percent or more, by weight, of alcohol in his or her blood.

working a DUI checkpoint" when respondent was stopped. As already discussed, sobriety checkpoints are constitutional so long as certain requirements are met. "[T]he operation of a sobriety checkpoint conducted in the absence of advance publicity, but otherwise in conformance with the guidelines we established in *Ingersoll* v. *Palmer . . . does not result in an unreasonable seizure within the meaning of the Fourth Amendment to the United States Constitution*." (*People* v. *Banks, supra,* 6 Cal.4th at p. 949, italics added.) Further, the evidence showing that there was a checkpoint, and that the officer witnessed signs of respondent's intoxication, demonstrates that "the peace officer had reasonable cause to believe that [respondent] had been driving a motor vehicle in violation of Section . . . 23152 . . . ." (§ 13557, subd. (b)(2)(A).) The fact that there was a checkpoint justified the officer's stopping respondent, and his subsequent observations of her condition gave him reasonable cause to believe she had been driving under the influence.

This interpretation comports with common sense and fosters efficiency. ■ We doubt that the Legislature intended to require the DMV to prove the constitutionality of each and every sobriety checkpoint, at every license revocation hearing, regardless of whether the issue had been raised. Such a result would be highly inefficient. No case has imposed such a requirement upon the DMV.

■ Further, Evidence Code section 664 provides that "It is presumed that official duty has been regularly performed. This presumption does not apply on an issue as to the lawfulness of an arrest if it is found or otherwise established that the arrest was made without a warrant." Thus, in the absence of evidence to the contrary, it is presumed that official duty has been properly performed. (*Spahn* v. *Spahn* (1945) 70 Cal.App.2d 791, 793 [162 P.2d 53]; see also *Davenport* v. *Department of Motor Vehicles* (1992) 6 Cal.App.4th 133, 143 [7 Cal.Rptr.2d 818]; *McKinney* v. *Department of Motor Vehicles* (1992) 5 Cal.App.4th 519, 525 [7 Cal.Rptr.2d 18]; *Imachi* v. *Department of Motor Vehicles* (1992) 2 Cal.App.4th 809, 815 [3 Cal.Rptr.2d 478].) In *McKinney, supra,* the court held that the DMV was not required to prove, in every administrative suspension hearing, that the blood alcohol test was properly administered and the machine was in working order. "Given the statutory presumption that official duty has been regularly performed (Evid. Code, § 664), the burden was on the person challenging the result, here McKinney, to show that there was some irregularity in the administration of the test such as would bring into question the reliability of the BAL readings." (*McKinney* v. *Department of Motor Vehicles, supra,* 5 Cal.App.4th at p. 525; see also *Imachi* v. *Department of Motor Vehicles, supra,* 2 Cal.App.4th 809.)

In this case, it is presumed the checkpoint was operated consistent with *Ingersoll*. The official duty—setting up and operating the sobriety checkpoint—is presumed to have been regularly performed. (Evid. Code, § 664.) Once the presumption attaches, it is then up to the licensee to attack the propriety of the checkpoint. She must show there was "some irregularity" in the sobriety checkpoint operation. (Cf. *McKinney* v. *Department of Motor Vehicles, supra,* 5 Cal.App.4th at p. 525.) Until she does so, the constitutionality of the checkpoint is not at issue.

Although respondent claims the Evidence Code section 664 presumption does not apply because she was arrested without a warrant, she applies the presumption to the wrong facts. Section 664 authorizes a presumption that the *checkpoint itself* was lawful—operated in a regular manner. Section 664 does not permit a presumption that respondent's *arrest* was lawful. Once the existence of the checkpoint is shown, the DMV still must show there were grounds to arrest respondent—reasonable cause to believe she had been unlawfully operating a motor vehicle. (Veh. Code, § 13557, subd. (b)(2)(A).)

Accordingly, once it was demonstrated that respondent was stopped pursuant to a sobriety checkpoint, and it is presumed such a checkpoint was "performed regularly," it was respondent's obligation to attack the constitutionality of the checkpoint if she so chose. Had she done so, then the DMV would have had to consider whether the checkpoint was constitutional under the *Ingersoll* guidelines. But respondent did not raise this issue. Rather, she contended the DMV was required to establish, as part of its "prima facie" case, that the *Ingersoll* guidelines were met.

Indeed, respondent never explained *why* she believed the checkpoint was unconstitutional. In fact, at the hearing, she never precisely raised the issue of unconstitutionality at all. At the end of the hearing, respondent simply stated, "And the argument is that the suspension should not go into effect based on a failure of proof, in that, the cases of *Ingersoll* and a current one, which is now, I believe being examined by the Courts, which is the Banks case, indicate there must be a certain showing made for a check point stop. My understanding, having read the law is that the burden shifts once I show that there was no arrest warrant to the people who want to suspend the license, whether it be you, the DMV, or the criminal courts, that failure of any proof to show the lawfulness of the arrest, there's been a failure of proof, and therefore the arrest, itself, has not been proven to be lawful . . . ."

Accordingly, since respondent failed to properly raise the issue of the constitutionality of the sobriety checkpoint, and merely claimed it was the

DMV's responsibility, as part of its "prima facie" case, to show compliance with *Ingersoll*, the checkpoint issue was not before the DMV. Since the issue was not before the DMV, the DMV was not obligated to consider whether the sobriety checkpoint complied with *Ingersoll*. The trial court therefore erred in granting the writ of mandate.

### Disposition

The judgment is reversed. Costs on appeal to appellant.

Cottle, P. J., and Premo, J., concurred.