Filed 3/25/14  Vega v. Valverde cA2/3

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION THREE

| | |
|---|---|
| ANTHONY AMADOR VEGA, | B247484 |
| Plaintiff and Appellant, | (Los Angeles County Super. Ct. No. BS138101) |
| v. | |
| GEORGE VALVERDE, DIRECTOR OF THE CALIFORNIA DEPARTMENT OF MOTOR VEHICLES, | |
| Defendant and Respondent. | |


        APPEAL from a judgment of the Superior Court of Los Angeles County,
Luis A. Lavin, Judge.  Affirmed.
        Law Offices of Chad R. Maddox and Chad R. Maddox for Plaintiff and Appellant.
        Kamala D. Harris, Attorney General, Alicia M.B. Fowler, Assistant Attorney
General, Michael E. Whitaker and Bruce Reynolds, Deputy Attorneys General, for
Defendant and Respondent.

Plaintiff and appellant Anthony Amador Vega (Vega) appeals a judgment denying his petition for writ of mandate. (Code Civ. Proc., § 1094.5.) Vega's petition sought to overturn a decision by the Department of Motor Vehicles (Department) imposing a one-year suspension of his driving privilege for his refusal to complete a required chemical test to determine the alcohol content of his blood.

Vega does not dispute that he refused to undergo testing after being requested to do so by a peace officer, and that he was advised of the consequences of a refusal to submit to testing. Vega's essential contention is that the record is insufficient to establish the sobriety checkpoint was conducted in accordance with constitutional guarantees.

We conclude Vega's arguments are without merit and affirm the judgment.

## FACTUAL AND PROCEDURAL BACKGROUND

1. *Facts relating to Vega's refusal to undergo chemical testing.*

On April 30, 2011 at 12:40 a.m., Officer Rodney Castillo (Castillo) observed Vega driving into a DUI checkpoint that was being conducted by the Alhambra Police Department Traffic Division on Atlantic Boulevard and Beacon Street. Castillo was assigned to work the line detail to check for valid drivers' licenses and verify that drivers were not driving under the influence of alcohol or drugs. After Castillo contacted Vega at the checkpoint and requested his driver's license, Castillo observed Vega's eyes were bloodshot and watery and he smelled a strong odor of alcohol emanating from the interior of the vehicle. Based on these indicia, Castillo asked Vega to step out of the vehicle so that Castillo could conduct a DUI investigation.

When Vega got out of the vehicle, he did not use the vehicle for balance or need any assistance or walk with an unsteady gait. However, when Castillo conducted a horizontal gaze nystagmus test on Vega, he showed a lack of smooth pursuit and tested positive for nystagmus. Castillo also conducted a Rhomberg test and observed Vega sway one to two inches in a circular motion. Vega estimated 16 seconds to be 30 seconds. Vega performed the finger-to-nose test by touching his finger to his nose six times. Vega performed the one-leg extended test and did not hop, sway, use his arms for balance, or put his foot down on that test. Finally, Castillo conducted a walk-and-turn

2

test. Vega did not walk heel to-toe in both directions as required by the test. Vega admitted to having two beers that night; his last drink was at 10:00 p.m. Castillo noted that Vega's breath had a strong odor of alcohol.

Vega refused to take a Preliminary Alcohol Screening Test. After Vega refused to take said test, Castillo arrested him for violation of Vehicle Code section 23152(a) (driving under the influence of alcohol). Castillo asked Vega to submit to a chemical test, which he also refused.

2. *Administrative proceedings*.

On April 30, 2011, the date of the arrest, the Department issued an administrative per se suspension of Vega's driving privilege.

Vega challenged his suspension. The Department conducted hearings on January 30, 2012 and May 8, 2012.

Officer Castillo was a witness at the first session. He testified, inter alia, he was not involved in the background preparation or the criteria that went into setting up the sobriety checkpoint. His role was merely to serve as a line officer at the checkpoint. In conducting the checkpoint, "[w]e went every five cars, let five go, stop five cars, let five go." That's "what we usually do at the DUI checkpoints."

There were no other witnesses. Vega did not attend the proceedings but was represented by counsel. There was no testimony at the brief second session, which consisted of closing arguments.

On June 8, 2012, the hearing officer issued a decision upholding the suspension of Vega's driving privilege.

3. *Superior court proceedings*.

a. *Vega's petition for writ of mandate*.

On June 22, 2012, Vega filed a petition for writ of mandate, seeking to overturn the Department's decision. Vega contended he rebutted the constitutionality of the DUI checkpoint because Castillo did not have a neutral formula with which to conduct the checkpoint. Further, even if the DUI checkpoint were constitutional, Castillo lacked probable cause to arrest him for driving under the influence. Vega also argued the

3

administrative record was incomplete because portions of the record were transcribed as "inaudible."

        b. *Department's opposition.*

With respect to Vega's challenge to the sobriety checkpoint, which is the focus of this appeal, the Department contended field officers are not involved in setting up the sobriety checkpoint. Case law recognizes the decision to establish a sobriety checkpoint is made by supervisory law enforcement personnel, not by field officers. (*Ingersoll v. Palmer* (1987) 43 Cal.3d 1321, 1341-1342 (*Ingersoll*).) Thus, Castillo could not be expected to "know the decisions regarding the checkpoint location, duration, etc., and therefore would not be qualified to testify to them. [Vega] failed to present any evidence from senior officers who established the checkpoint. It was his burden to do so. As a result, the Department's hearing officer was entirely appropriate in deciding that the sobriety checkpoint was not at issue."

        c. *Trial court's ruling.*

The matter was argued and submitted on February 19, 2013. Thereafter, the trial court ruled as follows:

The trial court found, inter alia, the weight of the evidence supported the conclusions that Vega was lawfully arrested, and that Castillo had reasonable cause to believe Vega was driving while under the influence of alcohol.

With respect to the pivotal issue on appeal concerning the propriety of the sobriety checkpoint, the trial court determined: "The weight of the evidence demonstrates that [Vega] did not rebut the presumption of the checkpoint's legality by affirmative evidence. Contrary to [Vega's] argument, the evidence in the administrative record demonstrates that Officer Castillo testified that the discretion of field officers was limited regarding who is to be stopped because of the application of a neutral formula. (AR 35) Indeed, Officer Castillo stated that the checkpoint stopped every five cars such that five cars would go through and the next five cars would be stopped. (*Id.*) Although Officer Castillo was not involved in the marketing, publication, or preparation of the checkpoint and other details surrounding the checkpoint, Officer Castillo's lack of knowledge is not

4

affirmative evidence that the checkpoint was unlawful pursuant to the holding in *Arthur v. Department of Motor Vehicles* [(2010) 184 Cal.App.4th 1199, 1206-1208 (*Arthur*) (affirmative evidence overcoming the presumption must be presented; that an officer was unaware of the formula applied at the checkpoint is not affirmative evidence sufficient to overcome the presumption).]

"[Vega's] attempts to distinguish *Arthur* from the instant case are unavailing. While Officer Castillo testified to a neutral formula that was applied to the checkpoint, his lack of knowledge regarding other details such as the checkpoint's publication and decision making at the supervisory level does not constitute affirmative evidence overcoming the presumption of the checkpoint's legality. Moreover, unlike in *Arthur*, there is no evidence in the record that [Vega] attempted to obtain documents from the Alhambra Police Department or the DMV pertaining to the sobriety checkpoint. Indeed, although Petitioner requested, and received, a continuance to allow him to call other witnesses regarding 'the *Ingersoll* criteria,' he never called any witness at the subsequent hearing date on May 8, 2012. . . . [¶] In sum, the Court finds that [Vega] has not presented any affirmative evidence rebutting the presumptive legality of the checkpoint."

As for Vega's argument with respect to the hearing officer's denial of a continuance, the trial court ruled that because Vega's attorney did not have a copy of the subpoena that was allegedly sent but " 'rejected,' " the hearing officer did not abuse her discretion in denying Vega's May 8, 2012 request to continue the hearing for a second time.

Finally, the trial court rejected Vega's contention concerning the alleged inadequacy of the administrative record. "The Court finds that, despite a few portions of the transcript that were transcribed as 'inaudible,' the administrative record is sufficiently adequate for judicial review. In any event, most of the inaudible sections of the transcript were on the second day of the hearing, May 8, 2012, when no witness testified."

On March 11, 2013, the trial court entered judgment denying the petition for writ of mandate. Vega filed a timely notice of appeal from the judgment.

5

**CONTENTIONS**

Vega contends: he rebutted the presumption that the checkpoint was constitutional; inaudible gaps in the administrative transcript requires the administrative decision to be set aside; and the Department abused its discretion in denying a continuance of the administrative hearing.

**DISCUSSION**

1. *Standard of review.*

When "a person petitions for a writ of mandate following an order suspending his or her driver's license, the [trial] court is required to determine, based on the exercise of its independent judgment, whether the weight of the evidence supports the administrative decision. (*Lake v. Reed* (1997) 16 Cal.4th 448, 456; Code Civ. Proc., § 1094.5) In making that determination, *the [trial] court acts as a trier of fact; it has the power and responsibility to weigh the evidence and make its own determination about the credibility of witnesses.* (*Barber v. Long Beach Civil Service Com.* (1996) 45 Cal.App.4th 652, 658.) The administrative findings, however, are entitled to 'a strong presumption of correctness,' and 'the party challenging the administrative decision bears the burden of convincing the court that the administrative findings are contrary to the weight of the evidence.' (*Fukuda v. City of Angels* (1999) 20 Cal.4th 805, 817.)" (*Arthur, supra,* 184 Cal.App.4th at pp. 1204-1205, italics added.)

On appeal, "we review the record to determine whether the court's findings are supported by substantial evidence. ' " 'We must resolve all evidentiary conflicts and draw all legitimate and reasonable inferences in favor of the trial court's decision. [Citations.] Where the evidence supports more than one inference, we may not substitute our deductions for the trial court's. [Citation.] We may overturn the trial court's factual findings only if the evidence before the trial court is insufficient as a matter of law to sustain those findings. [Citation.]' " ' (*Lake v. Reed, supra,* 16 Cal.4th at p. 457.)" (*Arthur, supra,* 184 Cal.App.4th at p. 1205.)

6

2. *General principles*.

a. *Sobriety checkpoints are a legitimate means of promoting public safety by deterring intoxicated persons from driving*.

In *Ingersoll*, the Supreme Court "held that 'within certain limitations,' sobriety checkpoints may be operated without violating the Fourth Amendment to the federal Constitution or the state Constitution. (*Ingersoll, supra*, 43 Cal.3d at p. 1325.) In *Ingersoll*, the court rejected the argument that the validity of sobriety checkpoints should be analyzed under the standard set forth in *In re Tony C.* (1978) 21 Cal.3d 888, 'requiring an individualized suspicion of wrongdoing.' (*Ingersoll, supra*, at p. 1327.) The *Ingersoll* court explained the primary purpose of a sobriety checkpoint is not to detect evidence of crime or arrest drunk drivers, but to 'promote public safety by deterring intoxicated persons from driving on the public streets and highways.' (*Id*. at p. 1328.) The court concluded the validity of sobriety checkpoints 'is to be determined not by the standard pertinent to traditional criminal investigative stops, but rather by the standard applicable to investigative detentions and inspections conducted as part of a regulatory scheme in furtherance of administrative purpose.' (*Ibid*.)" (*Arthur, supra,* 184 Cal.App.4th at p. 1205.)

*Ingersoll* court held "that 'stops and inspections for regulatory purposes may be permitted if undertaken pursuant to predetermined specified neutral criteria.' (*Ingersoll, supra*, 43 Cal.3d at p. 1335.) The court assessed the constitutionality of a sobriety checkpoint by 'weighing the gravity of the governmental interest or public concern served and the degree to which the program advances that concern against the intrusiveness of the interference with individual liberty.' (*Id*. at p. 1338.) The court explained that '[d]eterring drunk driving and identifying and removing drunk drivers from the roadways undeniably serves a highly important governmental interest' (*ibid*.), and there is evidence sobriety checkpoints 'do advance this important public goal.' (*Id*. at p. 1339.)" (*Arthur, supra,* 184 Cal.App.4th at pp. 1205-1206.)

b. *Criteria for evaluating the lawfulness of a sobriety checkpoint.*

In " 'examining the intrusiveness of such checkpoints, the *Ingersoll* court identified eight factors to "provide functional guidelines for minimizing the intrusiveness of the sobriety checkpoint stop." [Citation.]  These factors are: (1) decisionmaking at the supervisory level; (2) limits on discretion of field officers as to who is to be stopped; (3) maintenance of safety conditions; (4) reasonable location of the checkpoint; (5) a reasonable time and duration of the checkpoint; (6) indicia of the official nature of the roadblock; (7) the length and nature of the detention; and (8) advance publicity regarding each checkpoint.  [Citation.]' [Citation.]  'The eight factors identified in *Ingersoll* provide "functional guidelines" to assess the intrusiveness of a checkpoint." ' [Citation.]" (*Arthur, supra,* 184 Cal.App.4th at p. 1206.)

c. *Presumption of checkpoint's validity; licensee has burden to rebut presumption.*

Under Evidence Code section 664,[1] "it is presumed the checkpoint was operated consistent with *Ingersoll*.  The official duty—setting up and operating the sobriety checkpoint—is presumed to have been regularly performed.  [Citation.]  Once the presumption attaches, it is then up to the licensee to attack the propriety of the checkpoint.  [The licensee] must show there was 'some irregularity' in the sobriety checkpoint operation.  [Citation.]  Until [the licensee] does so, the constitutionality of the checkpoint is not at issue." (*Roelfsema v. Department of Motor Vehicles* (1995)

---

[1]     Evidence Code section 664 provides in relevant part: "It is presumed that official duty has been regularly performed."  The "rebuttable presumption under Evidence Code section 664 'effectuates the policy of relieving governmental officials from having to justify their conduct whenever it is called into question.' (*Jackson v. City of Los Angeles* (1999) 69 Cal.App.4th 769, 782.)" (*Arthur, supra*, 184 Cal.App.4th at p. 1206, fn. 3.)  We " 'doubt that the Legislature intended to require the DMV to prove the constitutionality of each and every sobriety checkpoint, at every license revocation hearing, regardless of whether the issue had been raised.' [Citation.]" (*Id*. at p. 1207, fn. 4.)

41 Cal.App.4th 871, 880 (*Roelfsema*); accord, *Arthur, supra*, 184 Cal.App.4th at pp. 1206-1207.)

       3. *Trial court properly rejected Vega's attack on the propriety of the checkpoint.*

         a. *Trial court properly found that Vega failed to meet his burden to show some irregularity in the operation of the checkpoint.*

As set forth above, the trial court found Vega failed to present "any affirmative evidence rebutting the presumptive legality of the checkpoint." The record supports the trial court's finding.

With respect to the propriety of the checkpoint, Vega's argument is simply that Castillo, the officer who stopped him, "had no idea what, if any, neutral formula was used at the checkpoint when he stopped [Vega]. There is no documentary or testimonial evidence to establish that a neutral formula was used; therefore, the stop of [Vega] was unlawful."

Vega's argument fails because the Department did not have the initial burden to establish the propriety of the checkpoint. Pursuant to Evidence Code section 664, the official duty in "setting up and operating the sobriety checkpoint – is presumed to have been regularly performed." (*Roelfsema, supra*, 41 Cal.App.4th at p. 880; accord, *Arthur, supra*, 184 Cal.App.4th at p. at p. 1206.) Therefore, Vega, as the licensee, had the initial burden to show some irregularity in the sobriety checkpoint operation. (*Roelfsema, supra*, at p. 880; *Arthur, supra*, at p. 1206.) Vega's argument that Castillo lacked recollection, and thus could not establish the propriety of the checkpoint, was insufficient to rebut the presumption that official duty was regularly performed. To reiterate the trial court's ruling, "Castillo's lack of knowledge is not affirmative evidence that the checkpoint was unlawful."

         b. *Trial court, sitting as a trier of fact, properly weighed and credited Castillo's testimony.*

Further, and in any event, Castillo's testimony was sufficient to establish that neutral criteria were employed at the checkpoint.

9

Vega's argument that Castillo was incompetent to testify regarding the operation of the checkpoint is based on the following colloquy at the administrative hearing:

"MR. SPINDEL [Vega's attorney]:   And when you were in the line, so to speak, you were – you were not every fifth car, every sixth car, you were actually stopping every vehicle that came across you and asking for their license, correct?

"OFFICER CASTILLO:  No. We went every five cars, let five go, stop five cars, let five go.

"MR. SPINDEL:   . . .   [N]ow, it doesn't say anything there in your report about that, does it?

"OFFICER CASTILLO:  No.

"MR. SPINDEL:  Okay.  So you have no documentation to support that as the protocol initiated or being used that night, correct?

"OFFICER CASTILLO:  Correct.

"MR. SPINDEL:  And it's just your – your memory, correct?

"OFFICER CASTILLO:  *That's what we usually do at the DUI checkpoints*.

"MR. SPINDEL:  Okay, motion to strike as non-responsive.

"[¶] . . . [¶]

"HEARING OFFICER GARCIA:  Okay.  Granted, the response will be stricken." (Emphasis added.)

As discussed, the role of the trial court herein was to exercise its independent judgment in ascertaining whether the weight of the evidence supported the administrative decision; in making its decision, the trial court was sitting as a trier of fact, with the power and responsibility to weigh the evidence and make its own determination as to the credibility of witnesses.  (*Arthur, supra,* 184 Cal.App.4th at pp. 1204-1205.)  The trial court was not confined by the hearing officer's ruling to strike a nonresponsive answer because the role of the trial court is to exercise its independent judgment on the *entire* record.  (*ReadyLink HealthCare, Inc. v. Jones* (2012) 210 Cal.App.4th 1166, 1172 [exercise of independent judgment requires trial court to review entire record to determine whether weight of the evidence supports administrative findings].)

10

On this record, the trial court properly found "the evidence in the administrative record demonstrates that Officer Castillo testified that the discretion of field officers was limited regarding who is to be stopped because of the application of a neutral formula. (AR 35) Indeed, Officer Castillo stated that the checkpoint stopped every five cars such that five cars would go through and the next five cars would be stopped."

We conclude the trial court properly weighed Castillo's testimony to find "Castillo testified to a neutral formula that was applied to the checkpoint."

4. *No abuse of discretion in hearing officer's denial of a second continuance*.

At the end of the first hearing, on January 30, 2012, the Department granted a continuance to enable Vega to present additional evidence regarding the legality of the checkpoint and the arrest. However, Vega contends the Department violated his right to due process "when it failed to grant a second continuance when [his] law enforcement witness was unavailable for the second hearing" on May 8, 2012.

The administrative record reflects that at the May 8, 2012 session, Vega's attorney requested a continuance at the commencement of the hearing on the ground the officer was unavailable. The hearing officer asked counsel: "Did you subpoena the officer to appear today?" Counsel responded he attempted to subpoena the officer, but the subpoena was "rejected." The hearing officer then inquired, "And do you have copies of the subpoena that was sent to the agency to have the officer appear?" Counsel responded, "I do not have those available right now."

In the mandamus proceeding, Vega raised the issue of the hearing officer's denial of a continuance. In that regard, the trial court ruled that because Vega's attorney did not have a copy of the subpoena that was allegedly sent but " 'rejected,' " the hearing officer did not abuse her discretion in denying Vega's May 8, 2012 request to continue the hearing for a second time.

We agree. On this record, given the inadequate showing made in support of the request for a continuance, we perceive no abuse of discretion in the hearing officer's denial of Vega's request for a second continuance.

11

5. *No merit to Vega's contention regarding the alleged inadequacy of the administrative record.*

The transcript of the May 8, 2012 session contains the following transcriptionist's note: "Audio volume was extremely low during this entire proceeding resulting in many inaudible designations. I transcribed it to the best of my ability to hear the words."

Vega contends the Department has a duty to maintain an accurate record of the hearing, and because of the gaps in the transcript, the evidence is insufficient to sustain a finding that Vega's witness was not lawfully subpoenaed. Vega's position is that had the May 8, 2012 session been properly transcribed, it would establish the hearing officer abused her discretion in refusing a second continuance.

In this regard, the trial court ruled, "despite a few portions of the transcript that were transcribed as 'inaudible,' the administrative record is sufficiently adequate for judicial review. In any event, most of the inaudible sections of the transcript were on the second day of the hearing, May 8, 2012, when no witness testified."[2]

As discussed, the inability of Vega's counsel to supply the hearing officer with a copy of the subpoena was a sufficient basis for the hearing officer to deny the request for a continuance.

Further, Vega has not shown what the inaudible portions of the transcript would have revealed. Vega did not identify the witness he attempted to subpoena, nor did he make an offer of proof as to the nature of said witness's testimony. Vega simply would have this court speculate that a perfect transcript would lead to a result more favorable to him.

We conclude that irrespective of the gaps in the transcript of the May 8, 2012 session, Vega failed to present any evidence to show an irregularity in the sobriety checkpoint. That is the beginning and the end of this case. Therefore, his contention with respect to the gaps in the administrative transcript is unavailing.

---

[2] The transcript of the May 8, 2012 hearing amounts to seven pages. Following the denial of Vega's request for a continuance, counsel presented closing arguments.

## DISPOSITION

The judgment denying Vega's petition for writ of mandate is affirmed.

The Department shall recover its costs on appeal.

## NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

KLEIN, P. J.

We concur:

KITCHING, J.

ALDRICH, J.